B.S. and Lois N. Tomlinson sued Dewey R. and Nadine Hollis and Ruth Hollis Gifford on July 17, 1987, alleging that they had acquired an easement by prescription across property owned by the Hollises and Gifford, specifically an old log road on unimproved land, called "Ridge Road." The Hollises and Gifford filed a counterclaim, alleging trespass, conversion, and intentional and willful cutting and destroying of trees. See Ala. Code 1975, § 35-14-1. Ruth Gifford died on October 9, 1988, and Joe Gifford, to whom she had conveyed the property at issue on March 2, 1988, was substituted as a defendant on October 14, 1988. After an ore tenus hearing, the trial court held that the Tomlinsons had obtained an easement 10 feet wide.
The Hollises and Gifford appealed, arguing that they were entitled to a jury trial on the Tomlinsons' complaint. This Court agreed, and reversed and remanded the case for a jury trial on the issue of whether the Tomlinsons were entitled to an easement by prescription. See Hollis v. Tomlinson,540 So.2d 51 (Ala. 1989).
On remand, the jury awarded the Tomlinsons a 12-foot easement, but also found that the Tomlinsons had trespassed on the Hollises' and Gifford's property and awarded the Hollises $750 and Gifford $3,000 in compensatory damages. The Tomlinsons moved for a J.N.O.V. with regard to the damages awarded to Gifford, based on the fact that the damage to the trees had occurred before Ruth Gifford conveyed the property to Joe Gifford. The Hollises and Gifford filed a similar motion alleging insufficiency of the evidence to establish an easement by prescription in the Tomlinsons' favor. The trial court granted the Tomlinsons' motion, but denied the Hollises' and Gifford's motion.
Only the Hollises appeal. They argue that the Tomlinsons failed to produce sufficient evidence that their use of the property was adverse and that it was under a claim of right. Specifically, the Hollises contend that the Tomlinsons' use of Ridge Road was merely permissive and that it was pursuant to an implied license.
This Court recently restated the elements necessary to prove an easement by prescription:
 " 'To establish an easement by prescription, the claimant must use the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner. The presumption is that the use is permissive, and the claimant has the burden of proving that the use is adverse to the owner.' "
Apley v. Tagert, 584 So.2d 816, 818 (Ala. 1991) (citation omitted) (emphasis added). If the evidence is insufficient as to any of these elements, and the party seeking the J.N.O.V. moved for a directed verdict on that ground, then a J.N.O.V. is proper. King Mines Resort, Inc. v. Malachi Mining Minerals,Inc., 518 So.2d 714 (Ala. 1987). Stated differently, the denial of a J.N.O.V. is sustainable only if there is sufficient evidence to support the challenged theory.
The record discloses that, prior to the present controversy, the Hollises and the Tomlinsons had enjoyed an amicable, pleasant relationship. It is undisputed that the Tomlinsons used Ridge Road to haul such things as hay and timber and to move cattle between their north farm and their south farm and that the Hollises were aware of such use. The record does not disclose, however, that that use was anything other than permissive. In fact, Mr. Tomlinson himself admitted on two occasions that he had asked the Hollises' son, John, for permission to "work the road": *Page 864 
 "Q. Now in the year 1972, did you have any conversation with John Hollis about doing some work on that Ridge Road?
"A. I did.
 "Q. And what was your conversation with him, please, sir?
"A. I told him I wanted to improve the road.
"Q. And what did he say to you?
 "A. We were in agreement on it. I told him I would mark it out, everywhere I could see through there, and we would improve the road.
 "Q. Okay, and did he make any offer to you of use of equipment or anything?
"A. He offered me the use of his bulldozer.
"Q. And did you use his bulldozer?
 "A. No. I talked it over with my employee. He had been having some trouble with that bulldozer. And we decided it might be expensive to use it. And it was a very big bulldozer, and so we never did use it.
"Q. But did you work on the road in 1972?
"A. Very little.
". . . .
 "Q. Isn't it true that shortly before this lawsuit was filed, that you talked to Mr. John Hollis, who is the son of Dewey Hollis, asking him to ask his father to allow you to haul timber out this old log road that we have got marked in red?
 "A. I asked him for permission to work the road so I could haul timber out. I didn't ask him permission to haul timber out.
 "Q. The road had been unused for so long that it wasn't in any shape for you to cross over it, isn't that right?
 "A. It hadn't been used as much in the last two or three years as it had previously to that.
 "Q. And you asked Mrs. Ruth Gifford about it too, didn't you?
"A. I did.
 "Q. How many conversations did you have with John Hollis about doing this before they gave you permission, as you say, to work the road?
 "A. I asked him the first time. I went back a week or two later and asked him had he talked to his dad about it. He said he hadn't got around to it. So I went back the next time and talked with him. It would be three times all told.
"Q. What did Mrs. Ruth Gifford tell you?
 "A. She agreed to it rather reluctantly. And she didn't want me damaging things back there. I could work the road, but she wanted it to stay as near like it was as it could stay."
We held in a recent case based on the ore tenus rule, Carr v.Turner, 575 So.2d 1066 (Ala. 1991), that the trial court was not plainly and palpably wrong in finding that the use of a driveway by a neighbor had been permissive only and that there was no easement by prescription, where the evidence was conflicting regarding whether the neighbor himself or his father had asked permission to use the driveway. Thus, we find the instant case even more lacking as to proof of adverseness, in light of Mr. Tomlinson's own admission that he first sought the Hollises' permission before "working the road."
It is also clear that the Tomlinsons did not use the road under a claim of right but, rather, recognized a superior right of ownership in the Hollises. The reason Mr. Tomlinson did not clear the road in 1972 is that Dewey Hollis asked him not to work on it:
 "Q. Okay, and was the road improved at that time [1972]?
"A. It was not.
"Q. And why was it not?
 "A. Well, it wasn't. I didn't start on it right then, even though Mr. John Hollis offered me the use of his bulldozer to clean the right-of-way out. My employ[ee] himself decided it might be more expensive to keep that bulldozer going than we wanted to get involved in.
 "Then Mr. John Hollis came to me after some events. He came to me *Page 865 
and said, `Let's hold up on that road work.'
"Q. Why was that?
 "A. Well, Mr. Roy Patterson that owned land in Section Bottoms had passed away. He [Hollis] made the statement to me that if there was not a good road down there, not a good access down there, that the land was going to have to sell for taxes, and he was interested in buying it.
 "And he didn't want the road worked right then, because it would go cheaper if it wasn't worked at that time."
The employee with whom Mr. Tomlinson discussed using the Hollises' bulldozer, Donald Butler, confirmed Mr. Tomlinson's acquiescence to Mr. Hollis's request:
 "Q. Were you present during any conversations between Mr. B.S. Tomlinson and John Hollis?
"A. Yes.
 "Q. And did Mr. Hollis offer his bulldozer to work the road?
"A. He did.
"Q. Did you and Mr. Tomlinson discuss that?
"A. Yes.
"Q. And did y'all use Mr. Hollis's bulldozer?
"A. No.
"Q. And why not?
 "A. Before it ever came down to building the road, Mr. Hollis had changed his mind a little bit on it, didn't want us to start on the road yet.
". . . .
"Q. Did Mr. Hollis tell you why?
 "A. He mentioned something about some landowner in the bottoms passed away, and they thought they was going to sell his place. And he was wanting to wait until after he received his soil before they built the road in there."
Although we look more to actions rather than words in determining whether a party has asserted a claim of right,Bearden v. Ellison, 560 So.2d 1042 (Ala. 1990), and Robertsonv. Fincher, 348 So.2d 466 (Ala. 1977), we find the following testimony by Mr. Tomlinson illuminating:
 "Q. Prior to the lawsuit being filed, you never told Dewey Hollis or Ruth Gifford that you claimed a right over their property, whether they liked it or not, did you?
"A. No, I didn't tell them that.
 "Q. And you never did anything by your action or verbally that would have put them on notice that you claimed the right to cross over their property, whether they liked it or not?
"A. I used the road."
As stated earlier, mere use alone, without any attendant conduct showing that such use is adverse to the owner or is pursuant to a claim of right, does not establish an easement.Apley v. Tagert, supra. We have carefully searched the record and we find no evidence of any conduct by the Tomlinsons indicating that their use of Ridge Road was under a claim of right, except that conduct that precipitated the present lawsuit: Mr. Tomlinson's cutting and destroying of the trees in 1986 when he widened Ridge Road to between 60 and 80 feet. SeeHollis v. Tomlinson, supra.
We are mindful of the general rule that a jury verdict is strengthened by the denial of a motion for new trial,Christiansen v. Hall, 567 So.2d 1338 (Ala. 1990). However, in the instant case, there simply is no substantial evidence of all of the elements necessary to establish an easement by prescription.[1] Thus, the trial court's judgment denying the Hollises' J.N.O.V. motion is reversed and the case is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.
[1] The complaint in this case was filed after June 11, 1987; thus, the "substantial evidence rule" applies. See Ala. Code 1975, § 12-21-12. *Page 866