BASCHAB, Presiding Judge.
 

 The appellant, Ulysses Charles Sneed, was indicted for the capital offense of robbery-murder for the 1993 killing of Clarence Nugene Terry.
 
 See
 
 § 13A-5-40(a)(2), Ala.Code 1975. In 1995, he was tried with codefendant John Hardy, convicted of capital murder, and sentenced to death.
 
 [1]
 
 We affirmed his conviction and death sentence,
 
 see Sneed v. State,
 
 783 So.2d 841 (Ala.Crim.App.1999), but the Alabama Supreme Court reversed his conviction based on the erroneous admission of a redacted statement he had made to law enforcement authorities that implied that he was the sole individual involved in the shooting.
 
 See Ex parte Sneed,
 
 783 So.2d 863 (Ala.2000).
 

 In 2006, the appellant was tried a second time and convicted of the capital offense of robbery-murder. After a sentencing hearing, by a vote of 7 to 5, the jury recommended that he be sentenced to imprisonment for life without the possibility of parole. The trial court overrode the jury’s recommendation and sentenced the appellant to death. This appeal followed.
 

 The evidence showed that, in the early morning hours of September 7, 1993, the appellant and Hardy entered Bud’s Convenience Store in Decatur; shot and killed the clerk, Clarence Nugene Terry; and stole one of the store’s cash registers. An autopsy revealed that the victim suffered seven gunshot wounds — two shots to his left cheek, one shot to his forehead, one shot to his left ear, one shot to his left eye socket, one shot to his chest, and one shot to his right hand.
 

 Several days before the robbery-murder the appellant and Christopher Hines drove from Louisville, Kentucky, in Hines’ vehicle to visit some of Hines’ relatives in Tanner. Sometime after they arrived, they met John Hardy.
 

 On the evening of September 6, 1993, the appellant and Hardy were driving around in Hines’ vehicle and were drinking and smoking marijuana. Hardy suggested that they “get some money,” and they drove by different convenience stores trying to locate a potential target. The appellant suggested that Bud’s Convenience Store might be a good target because only one clerk was working in the store. They drove around the store a few times and parked on the side. Before going into the store, Hardy tore off the sleeves of his shirt and they tied a sleeve around the bottom half of their faces. The sleeves did not disguise their identities.
 

 The entire robbery-murder was recorded on videotape and played for the jury.
 
 [2]
 
 The tape shows that the appellant and Hardy entered the store with Hardy pointing a rifle and apparently shooting at the victim. The victim ran behind the counter and tried to hide, but Hardy leaned over the counter and shot him. At the same time, the appellant crawled under the counter and tried to open the two cash registers that were on the counter. As the victim crouched in a ball on the floor behind the counter, Hardy then walked around the counter, pointed the rifle at his head, and shot him in the head repeatedly. While this was happening, the appellant tried unsuccessfully to open both of the
 
 *113
 
 cash registers. At one point, the appellant stepped over the victim’s body and moved his legs out of the way so he could have better access to one of the cash registers. Finally, Hardy unplugged one of the registers, and the appellant carried it out of the store.
 

 After they left the store, the appellant and Hardy went to Tanner to hide the cash register. The next morning, the appellant, Hardy, and Hines retrieved $48 from the cash register. The manager at Bud’s testified that the register that was taken had very little money in it because it was a back up register that had not been used on the day of the robbery-murder. After using the money to buy alcohol and gasoline, the appellant, Hardy, and Hines returned to Louisville, Kentucky.
 

 The investigation led law enforcement authorities to Kentucky, where they discovered Hines’ vehicle, which the appellant and Hardy had used in the robbery-murder. The appellant was arrested in Kentucky and was questioned by Lieutenant Dwight Hale and Sergeant John Boyd of the Decatur Police Department. After being confronted with the videotape of the robbery-murder, the appellant admitted his involvement in the robbery.
 

 The appellant testified in his own defense and admitted that he assisted in the robbery. However, he stated that he did not know that Hardy was going to shoot and kill the victim. Specifically, he testified:
 

 “We went in to rob. I did not intend for nobody to get killed or get hurt. That wasn’t part of the plan. That wasn’t part of the plan. We discussed robbing. That is all we did.”
 

 (R. 816.)
 

 The appellant raises several arguments on appeal that he did not raise at trial. Although the lack of an objection at trial will not bar our review of an issue in a case involving the death penalty, it will weigh against any claim of prejudice the appellant may raise.
 
 See Ex parte Kennedy,
 
 472 So.2d 1106 (Ala.1985). Rule 45A, Ala. R.App. P., provides:
 

 “In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review ... whenever such error has or probably has adversely affected the substantial right of the appellant.”
 

 “[This] plain-error exception to the contemporaneous-objection rule is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.’ ”
 
 United States v. Young,
 
 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting
 
 United States v. Frady,
 
 456 U.S. 152, 163 n.14, 102 S.Ct. 1584, 1592 n.14, 71 L.Ed.2d 816 n.14 (1982)).
 

 I.
 

 The appellant’s first argument is that the jury was improperly informed that he had previously been tried for and convicted of capital murder. The record shows that he moved in limine to prohibit “the State from making any reference to the prior trial, verdict, sentence or appeal of the Defendant.” (C.R. 199.) During a pre-trial hearing, the following occurred:
 

 “[THE COURT:] Motion to prevent any reference to a prior trial of the Defendant. Obviously there will be no reference to a prior trial.
 

 “Can we all agree that if there is any testimony that has to come in from that prior proceeding that will be please (sic) referred to as a prior proceeding?
 

 “[PROSECUTOR]: Yes, ma’am.
 

 “THE COURT: Is that okay with everybody?
 

 
 *114
 
 “[DEFENSE COUNSEL]: Yes, Your Honor. We are in agreement about that.
 

 “THE COURT: That motion is granted.
 

 “Please make sure if you have witnesses who are testifying that they are aware that there can be no prior — there can be no characterization of a prior trial. Okay.”
 

 (R. 11-12.)
 

 During the testimony of Brent Wheeler, Deputy Director of the Alabama Department of Forensic Sciences, the following occurred:
 

 “[PROSECUTOR]: And did you — after you analyzed those and checked or tested them, whatever term you used, did you keep those in your custody and control until you brought them to court and introduced them into evidence in another proceeding?
 

 “[WHEELER]: Yes, sir.
 
 They were introduced in the first trial.
 

 “[PROSECUTOR]: Yes, sir. Now, do they appear to be in substantially the same condition as they were in at that time?
 

 “[WHEELER]: Yes, sir.”
 

 (R. 751-52) (emphasis added). In several other instances, the references were made to a prior proceeding, in compliance with the trial court’s instructions. Because the appellant did not object to these references at trial, we review them for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 In
 
 Frazier v. State,
 
 632 So.2d 1002, 1007 (Ala.Crim.App.1993), we held that it was plain error for the prosecutor to comment that Frazier had previously been convicted of the same offense, stating:
 

 “In
 
 Lloyd v. State,
 
 53 Ala.App. 730, 733, 304 So.2d 232,
 
 cert. denied,
 
 293 Ala. 410, 304 So.2d 235 (1974), this court held that it is reversible error for the prosecution to comment on the result of a defendant’s previous trial at a subsequent trial for the same offense.
 
 See also Wyatt v. State,
 
 419 So.2d 277, 282 (Ala.Crim. App.1982). As the Fifth Circuit Court of Appeals stated in
 
 United States v. Attell,
 
 655 F.2d 703, 705 (5th Cir.1981), ‘[W]e are hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged.’ ”
 

 Likewise, in
 
 Hammond v. State,
 
 776 So.2d 884, 892 (Ala.Crim.App.1998), we held that, “at the sentencing phase of a second or subsequent capital murder trial, it is reversible error for the prosecution to comment on the result of a defendant’s previous trial for the same offense.” We noted that this is especially true when a prosecutor tells a penalty phase jury that a previous jury recommended that a defendant be sentenced to death. However, we have never held that it is error, much less plain error, for a witness to merely comment about a “first trial” or a prior proceeding.
 
 Cf. Hood v. State,
 
 245 Ga.App. 391, 392, 537 S.E.2d 788, 790 (2000) (footnote omitted) (noting that, “[w]here there is no mention of the result of a prior judicial proceeding, the bare reference to an earlier trial does not necessarily imply a conviction and reversal on appeal. The equally rational inference is a mistrial due to the inability to achieve a unanimous verdict”);
 
 State v. Lawrence,
 
 123 Ariz. 301, 305, 599 P.2d 754, 758 (1979) (noting that “[w]e are aware of no authority in this jurisdiction supportive of the contention that mere mention of a previous trial mandates reversal on appeal”).
 

 In this case, none of the references to a first trial or to prior proceedings specifically informed the jury that the appellant had previously been convicted of capital murder and sentenced to death. Accord
 
 *115
 
 ingly, we do not find that there was any plain error in this regard.
 

 II.
 

 The appellant’s second argument is that the trial court did not provide a lawful basis for overriding the jury’s recommendation of imprisonment for life without the possibility of parole and sentencing him to death. Specifically, he contends that the court did not comply with the Alabama Supreme Court’s decisions in
 
 Ex ‘parte Taylor,
 
 808 So.2d 1215 (Ala.2001), and
 
 Ex parte Carroll,
 
 852 So.2d 833 (Ala.2002), because it allegedly did not set forth adequate reasons for declining to follow the jury’s recommendation.
 

 In
 
 Ex parte Taylor,
 
 808 So.2d at 1219, the Alabama Supreme Court held:
 

 “This Court held in
 
 Ex parte Jones,
 
 456 So.2d 380 (Ala.1984), that the Constitution of the United States does not require the ‘[adoption of] specific limitations on the trial court’s power to override the jury’s advisory verdict’ and that Alabama’s capital-sentencing procedure provides sufficient protection for capital defendants because ‘[t]he whole catalog of aggravating circumstances must outweigh mitigating circumstances before a trial court may opt to impose the death penalty by overriding the jury’s recommendation’ of life imprisonment. 456 So.2d at 382. Under Alabama’s capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury’s recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (‘in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict’). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury’s recommendation the consideration he gave it.
 
 McCausland v. Tide-Mayflower Moving & Storage,
 
 499 So.2d 1378, 1382 (Ala.1986) (stating that subsections of a statute ‘should be construed together to ascertain the meaning and intent of each’).”
 

 (Footnote omitted.) Subsequently, in
 
 Ex parte Carroll,
 
 852 So.2d at 836, the Alabama Supreme Court stated:
 

 “We take this opportunity to further explain the effect of a jury’s recommendation of life imprisonment without the possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the ‘triggerman’ or a recommendation of leniency by the victim’s family; the jury’s recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.”
 

 (Footnote omitted.)
 

 With regard to the jury’s recommendation, the trial court stated the following in its sentencing order:
 

 “The jury recommended the defendant be sentenced to life imprisonment without possibility of parole. This non-statutory mitigating circumstance does exist and must be considered by the court.
 
 *116
 
 The vote was 5 in favor of the death penalty and 7 in favor of life without possibility of parole.[
 
 3
 
 ] The vote was almost equally split. Accordingly, this non-statutory mitigating circumstance is entitled to moderate weight in considering the appropriate sentence to impose in this case.
 

 [[Image here]]
 

 “The court overrides the jury recommendation in this case for several reasons. The capital offense was committed during the course of a robbery in a store that was purposefully chosen by the defendant where only one person was working. The capital offense is especially heinous, atrocious and cruel. Mr. Terry was gunned down without any reason. He was unarmed and defenseless, and he knew he was being shot at by masked intruders. The court can only imagine the terror he felt as he dove behind the counter trying to escape. The jurors witnessed the videotape of the robbery and murder and saw firsthand the defendant’s involvement in the capital offense. The jury found the defendant had the particularized intent to kill even though he was not the trig-german. The court did not believe the defendant’s testimony that he did not intend anyone to be killed and that he did not know that Hardy was going to shoot. The court is convinced from all the evidence that the defendant did nothing to stop Hardy because he did not want to stop the killing. The defendant wanted the money in the cash register, and that was all he focused on while in the store. The court does not attribute the defendant’s unfortunate upbringing and experiences as excuses for or explanations for his total lack of regard for the life of Mr. Terry as is evident by the defendant’s actions in this case. The sentence of death is not disproportionate or excessive when compared to penalties imposed in similar cases.”
 

 (C.R. 36-38.)
 

 Citing
 
 Ex parte Carroll,
 
 the appellant contends that the trial court could not lawfully override the jury’s recommendation without information that was not known to the jury. In
 
 Ex parte Carroll,
 
 the supreme court held that a jury’s recommendation of imprisonment for life without the possibility of parole must be considered as a mitigating circumstance. Although the supreme court also stated that a jury recommendation could be overridden based on information that was not known to the jury, it did not state that that was the only circumstance in which a jury recommendation could be overridden.
 

 In this ease, the trial court considered the jury’s recommendation as a nonstatu-tory mitigating circumstance and gave it moderate weight. It then stated specific reasons for giving the jury’s recommendation the consideration it gave it, including the appellant’s participation in the robbery-murder and the jury’s vote. Therefore, we conclude that the circuit court complied with both
 
 Ex paHe Taylor
 
 and
 
 Ex parte Carroll
 
 in overriding the jury’s recommendation.
 

 III.
 

 The appellant’s third argument is that the trial court erroneously concluded that the murder was especially heinous, atrocious, or cruel compared to other capital
 
 *117
 
 murders. He makes several different arguments in support of this contention.
 

 A.
 

 First, the appellant contends that he cannot be held responsible for the precise manner in which Hardy murdered the victim. Although Alabama appellate courts have not specifically addressed this issue, they have held that application of the especially heinous, atrocious, or cruel aggravating circumstance focuses on the manner of the killing and not the defendant’s actual participation in the murder.
 
 See Ex parte Bankhead,
 
 585 So.2d 112 (Ala.1991), rev’d on other grounds, 625 So.2d 1146 (Ala.1993);
 
 Lawhorn v. State,
 
 756 So.2d 971 (Ala.Crim.App.1999), aff'd, 581 So.2d 1179 (Ala.1991);
 
 Slaton v. State,
 
 680 So.2d 879 (Ala.Crim.App.1995), aff'd, 680 So.2d 909 (Ala.1996);
 
 Haney v. State,
 
 603 So.2d 368 (Ala.Crim.App.1991), aff'd, 603 So.2d 412 (Ala.1992).
 

 The Tennessee Court of Criminal Appeals addressed a similar issue in
 
 Owens v. State,
 
 13 S.W.3d 742, 761-62 (Tenn. Crim.App.1999), as follows:
 

 “Although a defendant may be death eligible following a determination of ‘major participation combined with reckless indifference to human life’ under
 
 Enmund [v. Florida,
 
 458 U.S. 782 (1982))-
 
 Tison [v. Arizona,
 
 481 U.S. 137 (1987) ], the question remains whether an aggravating factor may be applied vicariously to a defendant if he was not the actor responsible for the particular aggravating circumstance. In this regard, there is no Tennessee case that has decided the issue of whether a convicted murderer, who took no part in the killing itself and was unaware as to how it was to be accomplished, can be sentenced to death based upon the ‘heinous, atrocious, and cruel’ aggravating circumstance. In the felony murder context, the Tennessee Supreme Court has impliedly upheld the vicarious application of the heinous, atrocious, and cruel aggravator.
 
 See [State v.] Blanton,
 
 975 S.W.2d [269] at 279-280 [ (Tenn.1998) ] (‘heinous atrocious cruel’ factor upheld as applied to
 
 premeditated murder
 
 convictions based on sufficiency of evidence despite no evidence that defendant was perpetrator who inflicted fatal blows);
 
 State v. West,
 
 767 S.W.2d 387, 389, 396-397 (Tenn. 1989),
 
 cert. denied,
 
 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 764 (1990) (aggravating circumstances, (i)(5), (i)(6), and (i)(7), applied to defendant in capital case based upon finding of major participation and reckless indifference).
 
 [11]
 
 We conclude that a non-triggerman defendant can be held vicariously liable for an aggravating circumstance following an
 
 Enmund-Tison
 
 determination.
 

 
 *118
 
 (Some footnotes omitted.) We likewise specifically hold that an accomplice may be held vicariously liable for the manner in which his codefendant commits a murder. Thus, a court may properly apply the aggravating circumstance that a murder was especially heinous, atrocious, or cruel to a nontriggerman.
 

 B.
 

 Second, the appellant contends that the trial court gave an erroneous instruction that allowed the jury to consider his mental state when determining whether the murder was especially heinous, atrocious, or cruel. Specifically, he asserts that the court’s definition of cruel as “designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others” suggested that the jury should consider either his or Hardy’s mental state at the time of the murder. Because he raises this argument for the first time on appeal, we review it for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 The Alabama Supreme Court approved of a similar instruction in
 
 Ex parte Bankhead,
 
 585 So.2d 112, 125 (Ala.1991), rev’d on other grounds, 625 So.2d 1146 (Ala.1993), stating:
 

 “Bankhead argues that the trial court incorrectly charged the jury as to Bank-head’s personal participation in the murder. Bankhead contends that the trial court did not sufficiently restrict the applicability of § 13A-5-49(8) to Bank-head’s conduct in the crime. This is not a valid argument.
 

 “In § 13A-5-49(8), the emphasis is on the manner of the killing, not on the defendant’s actual participation. In the sentencing phase of a bifurcated trial under § 13A-5-43, the jury has already determined that the crime is a capital offense. That is, the jury has determined that the killing was intentional, because an intentional killing is a necessary element of capital murder. The State does not have to prove that the defendant inflicted the wounds or assign any particular wound to the defendant. Once the jury determines that the defendant has committed a capital offense, the sentencing phase can begin. It is during the sentencing phase that the jury considers whether ‘the capital offense was especially heinous, atrocious or cruel compared to other capital offenses.’ § 13A-5-49(8).”
 

 Therefore, we do not find that there was any plain error in the trial court’s instruction.
 

 C.
 

 Third, the appellant contends that the murder was not especially heinous, atrocious, or cruel compared to other capital offenses because the victim allegedly did not experience any more violence than was necessary to cause death, did not experience appreciable suffering after a swift assault, and did not experience psychological torture. In support of his argument, the appellant cites
 
 Norris v. State,
 
 793 So.2d 847 (Ala.Crim.App.1999), in which this court narrowed the application of this aggravating circumstance. However, on the same day we released
 
 Norris,
 
 we released Hardy’s case.
 
 See Hardy v. State,
 
 804 So.2d 247 (Ala.Crim.App.1999), aff'd, 804 So.2d 298 (Ala.2000). In
 
 Hardy,
 
 we held that this murder was especially heinous, atrocious, or cruel when compared to other capital offenses because the victim was conscious after the initial shot and was
 
 *119
 
 aware of what was happening to him. Specifically, we stated:
 

 “ ‘The evidence in this case clearly supports the trial court’s finding that this capital offense was especially heinous, atrocious, and cruel. The appellant shot the victim in the wrist and then shot the victim in the head after she had fallen to the ground. “When a defendant deliberately shoots a victim in the head in a calculated fashion, after the victim has already been rendered helpless by [prior] gunshots ..., such ‘extremely wicked or shockingly evil’ action may be characterized as especially heinous, atrocious, or cruel.”
 
 Lawhorn v. State,
 
 581 So.2d 1159 (Ala.Crim.App.1990), aff'd, 581 So.2d 1179 (Ala.), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 468 (1991).
 
 See also McWilliams v. State,
 
 640 So.2d 982 (Ala.Crim.App. 1991), aff'd in part, remanded in part on other grounds [640 So.2d 1015 (Ala. 1993), affd after remand, 666 So.2d 89 (Ala.Crim.App.1994), aff'd, 666 So.2d 90 (Ala.1995) ].
 
 Bush v. State,
 
 431 So.2d 555 (Ala.Crim.App.1982), aff'd, 431 So.2d 563 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). Further, “[e]vidence as to the fear experienced by the victim before death is a significant factor in determining the existence of the aggravating circumstance that the murder was heinous, atrocious, and cruel.
 
 Ex parte Whisenhant,
 
 555 So.2d 235, 243-44 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).”
 
 White v. State,
 
 587 So.2d 1218 (Ala.Crim.App.1990), aff'd, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992).’
 

 “Rieber v. State,
 
 663 So.2d 985, 993 (Ala. Crim.App.1994), aff'd, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995). See also
 
 Godfrey v. Georgia,
 
 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980);
 
 Lindsey v. Thigpen,
 
 875 F.2d 1509 (11th Cir.1989);
 
 Bush v. State,
 
 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997). Finally, we note that the prosecution’s evidence met the burden set out in
 
 Ex parte Clark,
 
 728 So.2d 1126 (Ala.1998): the victim was in fact conscious and aware during most of the ordeal.”
 

 Hardy,
 
 804 So.2d at 288.
 

 In its sentencing order, the trial court stated the following concerning this aggravating circumstance:
 

 “The court finds the state has proven beyond a reasonable doubt the capital offense was especially heinous, atrocious or cruel compared to other capital offenses, within the narrow meaning of this aggravating circumstance established in
 
 Kyzer v. State,
 
 399 So.2d 330 (Ala.1981). This crime is set apart from other capital cases in that the crime was a conscienceless and pitiless crime and was unnecessarily tortuous to the victim. When Hardy and the defendant first entered the store, Hardy started shooting. Mr. Terry can be seen in the video, and he is aware that he is being shot at. He ran behind the counter trying to hide and rolled himself into a ball. Mr. Terry was lying unarmed and helpless behind the counter on the floor immediately to the left of the defendant’s feet while the defendant tried to open the cash registers. The defendant never attempted to stop Hardy even as Hardy leaned over the counter and shot Mr. Terry in the chest. Mr. Terry was still alive and conscious at the time Hardy came around the counter, stood over Mr. Terry and shot him at least five more times in the head. The defendant never stopped trying to open the cash regis
 
 *120
 
 ters while Hardy was shooting Mr. Terry in the head. On the video, the defendant looked unfazed all the while Mr. Terry was being shot and killed. After Hardy quit shooting, the defendant kicked Mr. Terry’s foot out of the way in order to gain easier access to the second cash register. The court finds the defendant’s claims that he did not intend anyone to die and did not know that Hardy was going to shoot anybody to be false.
 

 “Further, the jury concluded that the defendant had the specific, particularized intent that Clarence Nugene Terry be killed during the course of the robbery thereby making the defendant legally accountable for the murder under accomplice liability even though he did not personally commit the act of murder. Therefore, the aggravating circumstance specified in § 13A-5-49(8),
 
 Code of Alabama,
 
 as amended, does exist and is considered by the court in determining the appropriate sentence to impose in this case.”
 

 (C.R. 30-31.)
 

 “ ‘[Ejvidence as to the fear experienced by the victim before death is a significant factor in determining the existence of the aggravating circumstance that the murder was especially heinous, atrocious, or cruel.’
 
 Ex parte Rieber,
 
 663 So.2d 999, 1003 (Ala.),
 
 cert denied,
 
 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995).”
 
 Norris v. State,
 
 793 So.2d 847, 860 (Ala.Crim. App.1999). The videotape of the robbery-murder shows that, when the appellant and Hardy entered the store, the victim ran to hide behind the counter; that the victim crouched on the floor behind the counter; and that the victim was alive after the first shot was fired and knew that his death was imminent. As we did in
 
 Hardy,
 
 we conclude that the trial court properly found that the murder was especially heinous, atrocious, or cruel compared to other capital offenses.
 

 IV.
 

 The appellant’s fourth argument is that the trial court did not consider and give appropriate weight to the circumstances surrounding the offense. Specifically, he contends that the court did not give weight to the fact that he was not the triggerman and that he did not intend to kill the victim. Because he raises this argument for the first time on appeal, we review it for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 “
 
 ‘While
 
 Lockett
 
 and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.’
 
 Bankhead v. State,
 
 585 So.2d 97, 108 (Ala.Cr.App.1989).”
 
 Ex parte Slaton,
 
 680 So.2d 909, 924 (Ala.1996). Although the trial court must consider all mitigating circumstances, it has discretion in determining whether a particular mitigating circumstance is proven and the weight it will give that circumstance.
 
 See Williams v. State,
 
 710 So.2d 1276 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997).
 

 In its sentencing order, the trial court stated:
 

 “There is evidence that the defendant was an accomplice in the capital offense and did not personally commit the act of killing which constituted the murder. Although the defendant did not actually pull the trigger, he was found guilty under a theory of accomplice liability. Specifically, a unanimous jury found the defendant had the specific, particularized intent at some point prior to the killing that deadly force be used against the victim. The killing was intentional and purposeful.
 

 
 *121
 
 “Therefore, the mitigating circumstance as specified in Section 13A-5-51(4) does exist and is considered by the court. In light of the guilty verdict and the fact this court finds the defendant intended that Hardy use deadly force against the victim, this mitigating circumstance is entitled to very little weight in determining the appropriate sentence to impose in this case.”
 

 (C.R. 33-34.) The trial court complied with
 
 Lockett v. Ohio,
 
 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and its progeny in considering the circumstances surrounding the offense. Therefore, we do not find that there was any error, much less plain error, in this regard.
 

 V.
 

 The appellant’s fifth argument is that the trial court erred in denying his motion to disqualify the entire Morgan County District Attorney’s office. Specifically, he contends that there was an actual conflict of interest in this case and that the trial court had an obligation to inquire into the matter.
 

 Before the trial, the appellant moved that the entire Morgan County District Attorney’s office be disqualified because one of his attorneys from his first trial, Wesley Lavender, was now employed by the Morgan County District Attorney’s office. At a pre-trial hearing, the following occurred:
 

 “THE COURT: Motion to disqualify the office of the Morgan County District Attorney.
 

 “Before Mr. Sneed, if you will remember, before actual sentencing hearing, didn’t Mr. Lavender go with the District Attorney’s office, if you recall? I think so. But, anyway, we were still in the case, is that a correct statement? And I issued an order at that time that Mr. Lavender — that basically he would have no contact with the District Attorney’s office concerning this case, nor would they have any with him. I called it the Chinese wall. I’m going to enter that order again. And I have no reason to believe that in the past it has been violated and would have no reason to believe that it would be violated in the future.”
 

 (S.R. 34-35.) During the appellant’s first trial, the trial court enjoined Lavender from discussing the case with anyone at the district attorney’s office. The court entered the same order before the appellant’s second trial.
 

 The record also shows that, sometime later, the district attorney filed a motion to enjoin Robert Weathers, Jr. from participating in the case. This notice states that one of the appellant’s former attorneys, Scott Slate, has a law partner, Robert Weathers, Jr., who is employed by the Morgan County District Attorney’s office. The notice further states:
 

 “Mr. Weathers will not participate in the trial of this cause, nor will he be permitted to work on pretrial matters or be privy to information concerning this case.
 

 “... In order to prevent the appearance of any impropriety on the part of the District Attorney’s Office and to eliminate the possibility of any actual conflict of interest arising and causing unnecessary delay in the trial of this case, the State of Alabama would request that the Court issue an order disqualifying Mr. Weathers from participation in this case and from communicating with members of the District Attorney’s staff concerning matters involving the case.”
 

 (C.R. 149-50.) The trial court also enjoined Weathers from participating in or assisting in the case.
 

 
 *122
 
 In Alabama, there is not a per se rule that a district attorney’s office must recuse itself when one assistant attorney has previously represented a defendant.
 
 See Smith v. State,
 
 639 So.2d 543 (Ala. Crim.App.1993);
 
 Terry v. State,
 
 424 So.2d 710 (Ala.Crim.App.1982);
 
 Hannon v. State,
 
 48 Ala.App. 613, 266 So.2d 825 (Ala. Crim.App.1972). In
 
 Smith,
 
 we stated:
 

 “[Defense counsel] did not breach the attorney-client relationship because he abstained from any participation in the prosecution of the appellant and he revealed no confidential information regarding his former client to anyone at the district attorney’s office.”
 

 639 So.2d at 548. In
 
 Hannon,
 
 we stated:
 

 “The public interest demanded that the prosecution go forward. There has been no breach of the attorney-client relationship, the privilege against disclosure has been preserved, and professional ethics, painstakingly observed, and the constitutional guarantee of a fair and impartial trial was not infringed.”
 

 48 Ala.App. at 618, 266 So.2d at 829.
 

 In this case, the trial court enjoined Lavender and Weathers from discussing the case with any other members of the district attorney’s office, and there is absolutely no indication that the court’s orders were violated. Indeed, defense counsel stated during a pre-trial hearing that he was not making any allegation that any improper communications had taken place. The appellant’s only argument was that there was an appearance of impropriety. (S.R. 37.) Under these circumstances, we conclude that there was not an actual conflict of interest in this case.
 

 Citing
 
 Cuyler v. Sullivan,
 
 446 U.S. 335, - 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the appellant also argues that the trial court should have inquired into the possible conflict. In
 
 Cuyler,
 
 the United States Supreme Court stated:
 

 “Holloway [v. Arkansas,
 
 435 U.S. 475 (1978) ] requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. Indeed, as the Court noted in
 
 Holloway, supra,
 
 at 485-486, trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. ‘An “attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.” ’ 435 U.S., at 485, quoting
 
 State v. Davis,
 
 110 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973). Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.”
 

 446 U.S. at 346-47, 100 S.Ct. at 1717 (footnotes omitted).
 
 See also Hannon v. State,
 
 48 Ala.App. 613, 620, 266 So.2d 825, 831 (1972) (“ ‘Nor is there basis for recusation in the charge that there is a possibility that Mr. Ware has violated the confidential relationship existing between attorney and client. Indeed, it is to be presumed that he, as a member of the bar in good standing, has and will respect the defendant’s confidence.’ ”).
 

 
 *123
 
 At the hearing on the motion to recuse, defense counsel stated: “I think the appearance of impropriety would be very strong, even though we are not alleging nor do we have any actual knowledge of discussion by Mr. Lavender with the district attorney or any of his staff that are employed with the D.A.’s office today.” (S.R. 37.) In fact, the appellant never alleged that there was any improper conduct in this case. Accordingly, the trial court did not err when it did not further inquire into any possible conflict.
 

 VI.
 

 The appellant’s sixth argument is that the trial court’s jury instruction on particularized intent “led jurors to believe that they could convict [him] of capital murder if either (1) they believed [he] had the intent to kill alone (i.e., without the presence of an underlying felony) or (2) they believed [he] assisted Mr. Hardy in the robbery while Mr. Hardy alone had the intent to kill.” (Appellant’s brief at p. 47.) He also argues that the trial court erroneously instructed the jury that intent could be formed on the spur of the moment. Because he raises these objections for the first time on appeal, we review them for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 “A trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts of the case.
 
 Raper v. State,
 
 584 So.2d 544 (Ala.Cr.App. 1991). A trial court’s oral charge to the jury must be construed as a whole, and must be given a reasonable — not a strained — construction.
 
 King v. State,
 
 595 So.2d 539 (Ala.Cr.App.1991);
 
 Kennedy v. State,
 
 472 So.2d 1092 (Ala.Cr.App.1984).”
 

 Williams v. State,
 
 710 So.2d 1276, 1305 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997).
 

 The trial court instructed the jury on capital murder, particularized intent, and accomplice liability as follows:
 

 “The defendant, Ulysses Charles Sneed, is charged with capital murder. The law states that an intentional murder committed during a robbery in the first degree is capital murder. A person commits an intentional murder if he causes the death of another person, and in performing the act or acts which cause the death of that person, he intends to kill that person.
 

 “A person commits robbery in the first degree if, in the course of committing or attempting to commit a theft, he uses force against the person of the owner or any person present with the intent to overcome his physical resistance or physical power of resistance, or threatens the imminent use of force against the person or the owner or any person present, with the intent to compel acquiescence to the taking of or escaping with the property, and in doing so, he is armed with a deadly weapon.
 

 “In this case the state does not profess that Ulysses Charles Sneed personally committed the act of killing the deceased. A person who does not personally commit the act of killing which constitutes the murder is not guilty of the capital offense of intentional murder during a robbery in the first degree unless that defendant is legally accountable for the murder because of complicity in the murder itself in addition to being guilty of the other elements of the offense of robbery in the first degree. Complicity is defined by Alabama Code Statute Section 13A-2-23 as follows: A person is legally accountable for the behavior of another person constituting a
 
 *124
 
 crime if, with intent to promote or assist the commission of the crime he procures, induces or causes such other person to commit the crime; or aids or abets such other person in committing the crime. The phrase ‘aid’ and ‘abet’ comprehends all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary.
 

 “A person who is legally accountable for the behavior of another person constituting a crime under the complicity statute is known as an accomplice.
 

 “It is not necessary for the state to prove capital murder that the defendant personally inflicted the wounds or any particular wounds to the deceased. What the state must prove is that the defendant had a particularized intent to kill the deceased, and/or that [he] sanctioned and facilitated the commission of the intentional killing during the course of a robbery. An intentional killing is a necessary requirement for a conviction of a capital offense. The killing cannot be the result of accident or recklessness or negligence. The fact that someone dies or is killed during the course of a robbery does not automatically provide intent. The intent to kill must be real and specific in order to invoke the capital statute.
 

 “The accomplice liability doctrine may be used to convict one of a capital offense who does not actually deal the lethal blow, or deal a blow at all, for that matter, but who is an accomplice, if the state proves beyond a reasonable doubt that the defendant was an accomplice in the intentional killing as opposed to being an accomplice in the underlying robbery. The burden is on the state to prove beyond a reasonable doubt that the defendant was an accomplice and that there was a previous understanding by prearrangement or on the spur of the moment, or just prior to the killing that the defendant had knowledge of the intent to kill. The state must prove that the accomplice was prepared to kill, intended to kill, or attempted to kill, or intended that the killing take place, or that deadly force would be employed against the victim.
 

 “To convict the defendant, the state must prove beyond a reasonable doubt each of the following elements of an intentional murder during robbery in the first degree:
 

 “One: That Clarence Nugene Terry is dead;
 

 “Two: That the defendant or his accomplice caused the death of Clarence Nugene Terry by shooting him;
 

 “Three: That in the commission of the act which caused the death of Clarence Nugene Terry the defendant intended for the deceased to be killed. A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and specific; it must be the particularized intent which I have previously defined for you;
 

 “Four: That the defendant or his accomplice committed or attempted to commit theft of one cash register and currency contained therein;
 

 “Five: That in the course of committing or attempting to commit the theft, the defendant or his accomplice used force against the person of Clarence Nu-gene Terry with the intent to overcome his physical resistance or physical power to resist, or to compel acquiescence to the taking of the property;
 

 “Six: That the defendant or his accomplice was armed with a deadly weapon; and
 

 
 *125
 
 “Seven: That the murder took place during the robbery.”
 

 (R. 934-39.)
 

 We have reviewed the instructions on capital murder, particularized intent, and accomplice liability as a whole. Based on that review, we conclude that the trial court clearly informed the jury that it could convict the appellant of capital murder only if he had the specific intent to kill the victim. Accordingly, we do not find that there was any error, much less plain error, in this regard.
 

 VII.
 

 The appellant’s seventh argument is that the State did not establish that he had the particularized intent to kill the victim.
 

 “ ‘[U]nder the accomplice liability doctrine, a nontriggerman accomplice may be convicted of the capital offense of double murder only if he had the particularized intent that both victims be killed. In addition, “[t]o affirm a finding of a ‘particularized intent to kill’ the jury must be properly charged on the intent to kill issue.” ’
 

 “Tomlin v. State,
 
 591 So.2d 550, 557 (Ala.Cr.App.1991) (citations omitted). ‘ “Intent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.” ’
 
 French v. State,
 
 687 So.2d 202, 204 (Ala. Cr.App.1995), rev’d on other grounds, 687 So.2d 205 (Ala.1996) (quoting
 
 McCord v. State,
 
 501 So.2d 520, 528-29 (Ala.Cr.App.1986)).
 

 “ ‘ “The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury.
 
 McMurphy v. State,
 
 455 So.2d 924 (Ala.Crim.App.1984);
 
 Craig v. State,
 
 410 So.2d 449 (Ala.Crim.App. 1981), cert. denied, 410 So.2d 449 (Ala. 1982).”
 
 Loper v. State,
 
 469 So.2d 707, 710 (Ala.Cr.App.1985). “Where one assaults another by the use of a deadly weapon, the law will infer from that fact that he designed to accomplish the probable and natural results of his act, in the absence of proof to the contrary.”
 
 Snipes v. State,
 
 364 So.2d 424, 426 (Ala.Cr.App.1978).’
 

 “Oryang v. State,
 
 642 So.2d 989, 994 (Ala.Cr.App.1994).”
 

 Wilson v. State,
 
 777 So.2d 856, 932-33 (Ala.Crim.App.1999), aff'd, 777 So.2d 935 (Ala.2000).
 

 “Pulling the trigger is only one factor in determining intent to kill.
 
 Ritter v. State,
 
 375 So.2d 270, 274-275 (Ala.1979). From the testimony concerning the defendant’s words and actions during the course of the robbery, the jury had sufficient evidence from which to infer that the defendant was prepared to kill, intended to kill, and supported Watkins in his killing of [the victim] and, thus, that the defendant was an accomplice to the intentional killing of [the victim].”
 

 Ex parte Raines,
 
 429 So.2d 1111, 1113 (Ala.1982). Finally, “ ‘[w]hether a non-trigger man aided and abetted the actual killing itself, such as by being present to render assistance in the killing itself if it becomes necessary, will almost always be a jury question.’ ”
 
 Gamble v. State,
 
 791 So.2d 409, 445 (Ala.Crim.App.2000).
 

 This is a unique case where the robbery-murder was recorded on videotape and the jury had a first-hand view of the appellant’s actions during the events leading to the victim’s death. The videotape shows that the appellant supported Hardy’s actions, that he stood ready and willing to assist Hardy if it became necessary, and that his participation in the rob
 
 *126
 
 bery-murder was significant. From this evidence, the jury could have reasonably concluded that the appellant was an accomplice in the murder and that he had the particularized intent that the victim be killed. Therefore, his argument to the contrary is without merit.
 

 VIII.
 

 The appellant’s eighth argument is that the trial court erroneously admitted the statement he made to law enforcement officers. Specifically, he contends that it was unreliable because it was not a verbatim account of all of his comments, because the officers allowed him to answer only their specific questions, and because an officer wrote it. He did not raise these contentions at trial. Therefore, we review them for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 Because the appellant did not object to the admission of his statement, the trial court did not conduct a formal suppression hearing. However, the officer who spoke with the appellant testified at trial. Lieutenant Hale of the Decatur Police Department testified that, on September 13, 1993, he and Sergeant Boyd went to Louisville, Kentucky, to speak with the appellant; that he read the appellant his Miranda
 
 [4]
 
 rights; that he asked about the appellant’s education; that the appellant told him that he was 23 years of age, had completed high school, and could read and write; and that the appellant signed a rights waiver form.
 

 Hale testified that the appellant initially denied having been in Alabama. However, when he told the appellant about the videotape of the crime, the appellant said, “ T didn’t kill anybody. I just took the cash register.’ ” (R. 691.) After they showed him the videotape, the appellant said, “ ‘I’m sorry, I’m sorry.’ ” Hale testified that he then asked the appellant if he would make a statement; that he did not make any promises, threats, or inducements to secure the appellant’s statement; that the appellant made a detailed statement; that he handwrote the statement; and that the appellant signed and initialed each page, indicating that it was his statement. In the statement the appellant said that he participated in the robbery, but that he did not know Hardy was going to kill the victim.
 

 ‘“The state is not required to prove all that the accused said when he confessed because the accused himself has the right to prove the remainder of his statement.’
 
 McElroy,
 
 § 200.17 at 446. ‘A confession is not rendered inadmissible because it is not verbatim as related by the accused and is admissible if its transcription is substantially as related and affirmed by the accused.’
 
 King v. State, 355
 
 So.2d 1148, 1150 (1978). ‘The fact that the written statements signed by the defendant are not exactly, word for word, what he told the investigators is without legal significance.’
 
 Corbin v. State,
 
 412 So.2d 299, 301 (Ala.Cr.App. 1982). See also
 
 Hobbs v. State,
 
 401 So.2d 276, 282-83 (Ala.Cr.App.1981);
 
 Carpenter v. State,
 
 400 So.2d 417, 423 (Ala.Cr.App.), cert. denied, 400 So.2d 427 (1981).”
 

 Barrow v. State,
 
 494 So.2d 834, 840 (Ala.Crim.App.1986).
 

 The evidence in the record before us does not support the appellant’s argument that the trial court should not have admitted his statement because it was not accurate. Therefore, we do not find that there was any plain error in this regard.
 

 
 *127
 
 IX.
 

 The appellant’s ninth argument is that the trial court improperly refused to assign several mitigating circumstances their “due weight.” As we have already noted, “ ‘[w]hile
 
 Lockett
 
 and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.’
 
 Bankhead v. State, 585
 
 So.2d 97, 108 (Ala.Cr.App.1989).”
 
 Ex parte Slaton,
 
 680 So.2d 909, 924 (Ala.1996). Although the trial court must consider all mitigating circumstances, it has discretion in determining whether a particular mitigating circumstance is proven and the weight it will give that circumstance.
 
 See Williams v. State,
 
 710 So.2d 1276 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997).
 

 The appellant contends that the trial court did not find or did not give sufficient weight to the following mitigating circumstances: 1) he was an accomplice in the capital offense committed by another person and his participation was relatively minor; 2) his age at the time of the offense; 3) evidence about his life circumstances, including his violent upbringing and drug and alcohol use; 4) that he did not appreciate the criminality of his conduct; 5) that he was suffering from extreme mental and emotional disturbance at the time of the offense; and 6) that he was remorseful.
 

 When considering these mitigating circumstances, the trial court stated:
 

 “There is evidence that the defendant was an accomplice in the capital offense and did not personally commit the act of killing which constituted the murder. Although the defendant did not actually pull the trigger, he was found guilty under a theory of accomplice liability. Specifically, a unanimous jury found the defendant had the specific, particularized intent at some point prior to the killing that deadly force be used against the victim. The killing was intentional and purposeful.
 

 “Therefore, the mitigating circumstance as specified in Section 13A-5-51(4) does exist and is considered by the court. In light of the guilty verdict and the fact this court finds the defendant intended that Hardy use deadly force against the victim, this mitigating circumstance is entitled to very little weight in determining the appropriate sentence to impose in this case.”
 

 (C.R. 33-34.)
 

 “At the time of the capital offense, the defendant was twenty-three years old. Therefore, the court finds the mitigating circumstance specified in § 13A-5-51(7) does exist and is considered by the court. The court finds this circumstance is entitled to very little weight in determining the appropriate sentence to impose in this case.”
 

 (C.R. 35.)
 

 “The court finds there is no evidence that the capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance. At the sentencing phase of the trial, the defendant offered testimony of a forensic and clinical psychologist, Dr. Marianne Rosenzweig, who administered psychological tests to the defendant and interpreted the results to determine if he showed any current symptoms of having been traumatized earlier in life. Dr. Rosenzweig found the defendant’s scores indicated he is ‘likely to have a number of psychological difficulties’ such as being an anxious individual ‘who characteristically deals with anxiety by worrying’ and being an ‘insecure person whose fears about past traumas are likely to lead to him behaving in maladaptive ways.’ Her writ
 
 *128
 
 ten report indicated the defendant’s scores on several scales suggested ‘that he is a patient person who is not easily frustrated or angered’; that he ‘is likely to have considerable difficulty with im-pulsivity’; that ‘he does not appear to have the personality make-up of an anti-social or psychopathic individual in that he has empathy for others, is not self-centered, and also is not a thrill-seeking person’; and that his ‘scores further reveal him to be a person with adequate control over any feelings of anger.’ Dr. Rosenzweig also administered the Traumatic Symptom Inventory to the defendant. The test consists of 100 items that ask the respondent how often, if at all, he has experienced a variety of symptoms
 
 in the last six months.
 
 The capital offense was committed in 1993. Dr. Rosenzweig stated in her report that his test scores indicated the defendant ‘is experiencing unwanted, intrusive symptoms associated with a past trauma, such as nightmares and flashbacks’; that ‘he actively tries to avoid having thoughts or feelings about a past trauma(s)’; that he has problems with sexual dysfunction and distress about sexual matters’; that ‘he tends to act out negative emotional states.’ Dr. Rosenzweig concludes that the results of the tests ‘reveal him to be an individual who seems to have suffered some trauma(s) in the past that remains a source of considerable anxiety in the present. Given his results on both tests, likely psychological diagnoses for Mr. Sneed would include Post Traumatic Stress Disorder and Borderline Personality Disorder.’ Dr. Rosenzweig testified that the defendant was not mentally retarded and that he was at least the average range of intelligence or above. Perhaps the trauma experienced by the defendant included his participation in the murder of Mr. Terry. Considering all the testimony and evidence offered by the defendant relating to this mitigating circumstance, the court finds the mitigating circumstance specified in Section 13A-5-51(2) does not exist and is not considered.
 

 [[Image here]]
 

 “(5) There is no evidence that, at the time of the capital offense, the defendant acted under extreme duress or under the substantial domination of another person. Therefore, the mitigating circumstance as specified in § 13A-5-51 (5) does not exist and is not considered by the court.
 

 “(6) The defendant has neither asserted nor offered evidence that, at the time of the capital offense, his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. The court finds from the evidence that at the time of the commission of the offense in this case on September 7, 1993, the defendant was twenty-three years old, had completed high school, was of normal intelligence and had the capacity to appreciate the criminality of his conduct. The defendant testified he was using alcohol and smoking marijuana laced with cocaine prior to the murder. Any evidence of drug and/or alcohol use comes from the defendant. The defendant’s written statement to the police did not mention drug use. The court finds from the evidence, including the videotape, that the defendant was cognizant and appeared to be in full control of his physical and mental faculties at the time of the murder. Therefore, any evidence of drug and/or alcohol use to establish diminished capacity is rebutted by evidence presented at trial. Therefore, the mitigating circumstance as specified in § 13A-5-51(6) does not exist and is not considered by the court.
 

 
 *129
 
 [[Image here]]
 

 “Non-Statutory Mitigating Circumstances
 

 “(1) The circumstances of the offense are not mitigating at all. The manner in which the murder was committed has been found to be especially heinous, atrocious and cruel. Therefore, this mitigating circumstance does not exist and is not considered by the court.
 

 “(2) Joanne Terrell, clinical social worker, prepared a ‘Psychosocial Assessment’ on the defendant after gathering information from police reports, educational and medical records, interviews with the defendant, his mother, his sister, his brother, maternal aunts and a maternal uncle. She testified there was significant abuse in the defendant’s past. His father was very abusive to his mother, and when the defendant would defend his mother, he would be abused by his father as well. Ms. Terrell testified the defendant reported he was raped by an older man in the neighborhood when he was nine years old. When he was eleven years old, an alcoholic who was a worse abuser than his father, lived in his home until he was fifteen. The defendant had his first treatment for emotional problems when he was twelve years old for behavioral problems he was experiencing at school and at home. The treatment lasted about two weeks. A month later he was referred for psychological evaluation and was diagnosed with ‘Dysthymic Disorder.’ He was treated for behavioral and mood problems at Children’s Treatment Service, a residential program for troubled youth until February, 1982. He transferred to reform school from the clinic.
 

 “The defendant had treatment at Cardinal Treatment Center when he was sixteen-seventeen years old. He was having problems with his mother’s boyfriend who was abusive, and his mother supported her boyfriend. Ms. Terrell testified the defendant was about twelve years old when he started drinking alcohol and smoking marijuana. She testified this self medication is typical of someone who cannot get mental health treatment. Ms. Terrell testified, that, in her professional opinion, the effect of the abuse and trauma experienced by the defendant caused personality deficits. As a result, she believes he cannot cope with stress. In the Psychosocial Assessment prepared by Ms. Terrell [she] states, Ve believe there are several compelling mitigating factors present:
 

 “ T. Mr. Sneed was born and grew up in a violent and traumatic environment. He was physically abused by his father, and a series of his mother’s boyfriends throughout his childhood.
 

 “ ‘2. He witnessed the severe and pervasive domestic violence of his mother by his father and a series of her boyfriends.
 

 “ ‘3. He was likely raped at a young age by a virtual stranger and told no one of this until he was out of high school.
 

 “ ‘4. He attempted to self-medicate the damage these traumas caused him by the abuse of drugs and alcohol at a young age (12 years old). This pattern of addiction continued throughout his life. It appears that the emotional damage caused by these traumas was resistant to mental health treatment.
 

 “ ‘5. His emotional problems which were worsened by his drug and alcohol problems led him to a life of petty crime and general instability until the point of the current offense.
 

 “ ‘6. Indirectly all of the above factors contributed to his participation in the capital offense for which he has been charged.
 

 
 *130
 
 “ ‘7. Mr. Sneed was not the shooter in this offense and maintains that he had no intention of hurting anyone and the surveillance cameras would tend to support that position.’
 

 “The court finds the non-statutory mitigating factors enumerated 1., 2., 3., 4., and 5. above do exist and are considered by the court. The court finds these non-statutory mitigating factors are entitled to little weight in considering the appropriate sentence to impose in this case.
 

 “(3) The jury recommended the defendant be sentenced to life imprisonment without possibility of parole. This non-statutory mitigating circumstance does exist and must be considered by the court. The vote was 5 in favor of the death penalty and 7 in favor of life without possibility of parole. The vote was almost equally split. Accordingly, this non-statutory mitigating circumstance is entitled to moderate weight in considering the appropriate sentence to impose in this case.”
 

 (C.R. 32-37.)
 

 “The circuit court must consider evidence offered in mitigation, but it is not obliged to find that the evidence constitutes a mitigating circumstance,”
 
 Calhoun v. State,
 
 932 So.2d 923, 975 (Ala.Crim.App.2005), even if that evidence is from an expert.
 

 “ ‘[A] factfinder is not bound by expert testimony “even if all of the witnesses are presented by only one side.” ’
 
 Ellis v. State,
 
 570 So.2d 744, 752 (Ala.Cr.App. 1990). Tn Alabama, opinion testimony of an expert witness is binding upon a jury only when such testimony concerns a subject which is exclusively within the knowledge of experts and the testimony is uncontroverted.’
 
 Jefferson County v. Sulzby,
 
 468 So.2d 112, 116 (Ala.1985). ‘An expert’s opinion, however, is not conclusive on the trial court, even though uncontroverted.
 
 See Kroger Co. v. Millsap,
 
 280 Ala. 531, 196 So.2d 380 (1967). Rather, a trial court must look to the entire evidence and its own observations in deciding factual issues.’
 
 Williams v. City of Northport,
 
 557 So.2d 1272, 1273 (Ala.Civ.App.1989), cert. denied, [498] U.S. [822], 111 S.Ct. 71, 112 L.Ed.2d 45 (1990). ‘Merely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact.’
 
 Harrell v. State,
 
 470 So.2d 1303, 1308 (Ala.Cr.App.1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).”
 

 Carroll v. State,
 
 599 So.2d 1253, 1272 (Ala. Crim.App.1992), aff'd, 627 So.2d 874 (Ala. 1993). The excerpts set forth above show that the trial court complied with
 
 Lockett v. Ohio,
 
 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and its progeny in considering the above-referenced mitigating circumstances. Therefore, we do not find that there was any error in this regard.
 

 X.
 

 The appellant’s tenth argument is that a death sentence for a nontriggerman accomplice is excessive. In
 
 Enmund v. Florida,
 
 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), Enmund drove the
 
 getaway
 
 ear and was in the car during the robbery-murder. The United States Supreme Court vacated his death sentence after finding that death was disproportionate “for one who neither took life, attempted to take life, nor intended to take life.” 458 U.S. at 786, 102 S.Ct. at 3371. Five years later, in
 
 Tison v. Arizona,
 
 481 U.S. 137, 157, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987), the United States Supreme Court again considered whether a nontrig-
 
 *131
 
 german could be sentenced to death and stated:
 

 “[W]e hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.
 

 “The petitioner’s own personal involvement in the crimes was not minor, but rather, as specifically found by the trial court, ‘substantial.’ Far from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery, each petitioner was actively involved in every element of the kidnapping-robbery and was physically present during the entire sequence of criminal activity culminating in the murder of the Lyons family and the subsequent flight. The Tisons’ high level of participation in these crimes further implicates them in the resulting deaths. Accordingly, they fall well within the overlapping second intermediate position which focuses on the defendant’s degree of participation in the felony.”
 

 Since
 
 Enmwnd,
 
 and
 
 Tison,
 
 Alabama has upheld death sentences for nontriggerman accomplices.
 
 See Ziegler v. State,
 
 886 So.2d 127 (Ala.Crim.App.2003) (affirmed death sentence for accomplice who was present during kidnapping-murder and watched his accomplices beat the victim to death);
 
 Gamble v. State,
 
 791 So.2d 409 (Ala.Crim.App.2000) (affirmed death sentence for nontriggerman in robbery-murder of pawn shop employees);
 
 Haney v. State,
 
 603 So.2d 368 (Ala.Crim.App.1991), aff'd, 603 So.2d 412 (Ala.1992) (affirmed death sentence for defendant who was not present during robbery-murder but who hired her codefendant to kill her husband);
 
 Burton v. State,
 
 651 So.2d 641 (Ala.Crim. App.1993), aff'd, 651 So.2d 659 (Ala.1994) (upheld death sentence for accomplice who did not actually kill the victim but had planned the robbery and was armed with a weapon);
 
 Bankhead v. State,
 
 585 So.2d 97, 109-11 (Ala.Crim.App.1989) (footnote omitted), affd in relevant part, 585 So.2d 112 (Ala.1991), rev’d on other grounds, 625 So.2d 1146 (Ala.1993).
 

 In this case, the appellant was actively involved in the robbery-murder and was present during the entire sequence of events that culminated with the murder of the victim. Therefore, even though he was not the triggerman, the sentence of death for his participation in the robbery-murder of the victim is not excessive.
 

 XI.
 

 The appellant’s eleventh argument is that the trial court erred in allowing the jury to see photographic slides of the victim’s injuries because the slides were allegedly inflammatory and prejudicial. Because he raises this argument for the first time on appeal, we review it for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P.
 

 In reviewing the slides, we are guided by the following principles:
 

 “Appellant’s final contention of error is that the trial court erred in allowing the prosecutor, during the testimony of the medical examiner, to illustrate the nature of the victim’s wounds by use of 17 photographic slides of the victim’s body. Appellant argues that these slides were irrelevant, inflammatory, inaccurate, misleading, and cumulative, and that the trial court should not have allowed the medical examiner to use them as an aid to his testimony.
 

 “Generally, photographs are admissible into evidence in a criminal prosecu
 
 *132
 
 tion ‘if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.’
 
 Magwood v. State,
 
 494 So.2d 124, 141 (Ala.Cr.App.1985),
 
 aff'd,
 
 494 So.2d 154 (Ala.1986),
 
 cert. denied,
 
 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
 
 See also Woods v. State,
 
 460 So.2d 291 (Ala.Cr.App.1984);
 
 Washington v. State,
 
 415 So.2d 1175 (Ala.Cr.App. 1982); C. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 207.01(2) (3d ed. 1977).
 

 “It has long been the law in Alabama that ‘[pjhotographs which show external wounds in the body of a deceased victim, even though they are cumulative and based on undisputed matters, are admissible. The fact that they are gruesome is not grounds to exclude them so long as they shed light on the issues being tried.’
 
 Burton v. State,
 
 521 So.2d 91, 92 (Ala.Cr.App.1987). See also
 
 Kinder v. State,
 
 515 So.2d 55 (Ala.Cr.App.1986). The fact that a photograph is gruesome and ghastly is no reason to exclude it from the evidence, so long as the photograph has some relevancy to the proceedings, even if the photograph may tend to inflame the jury.
 
 Magwood v. State, supra,
 
 494 So.2d at 141.
 
 See also Hutto v. State,
 
 465 So.2d 1211 (Ala.Cr.App.1984);
 
 Jones v. State,
 
 439 So.2d 776 (Ala.Cr.App.1983);
 
 Godbolt v. State,
 
 429 So.2d 1131 (Ala.Cr.App.1982).
 

 “This rule of law applies not only to photographs, but to photographic slides as well.
 
 Goffer v. State,
 
 430 So.2d 896 (Ala.Cr.App.1983). In
 
 Goffer,
 
 we wrote as follows:
 

 [[Image here]]
 

 “ ‘... The slides were just enlargements of photographs and the wounds were shown in relation to the deceased. The slides gave the jury a better understanding of the nature and gravity of the deceased’s injuries, and we do not believe the slides distorted the injuries or misled the jury in any way.’
 

 “430 So.2d at 898-99.
 

 [[Image here]]
 

 “Appellant also contends that the slides were misleading to the jury because they revealed postmortem sloughing of skin and other signs of decomposition. Specifically, he argues that the slides revealed ‘circumstances of death that had nothing to do with the defendant’s character, the nature of the crime, or an appropriate sentence.’ However, this evidence of decomposition was entirely separate from the stab wounds to which the jury’s attention was focused, and the medical examiner carefully pointed out to the jury these other factors and identified them as being due to post-mortem deterioration of the body. Thus, we see no reason for the jury to have been misled by this aspect of the slides.
 

 “Appellant further argues that, because several slides showed wounds into which probes had been inserted, the slides did not accurately depict the wounds. The State argues, and we agree, that while probes were shown in some wounds, they were inserted for the sole purpose of illustrating the depth and nature of the wounds, relevant factors in determining whether the crime was especially heinous, atrocious, or cruel. The probes were consistently pointed out to the jury, and their function was explained. Moreover, the use of the probes did not distort the size of the wounds so that they appeared larger than they actually were; thus, this case is distinguished from
 
 Wesley v. State,
 
 32
 
 *133
 
 Ala.App. 383, 26 So.2d 413 (1946). Therefore, the jury could not have been misled by the insertion of probes into certain of the wounds.
 

 “Finally, appellant argues that the slide presentation should not have been allowed because the slides were cumulative of the photographs, which were received into evidence. As we stated above, however, such evidence is ‘admissible even though they are cumulative evidence based on an undisputed matter.’
 
 Kinder v. State, supra,
 
 515 So.2d at 64.”
 

 Bankhead v. State,
 
 585 So.2d 97, 109-11 (Ala.Crim.App.1989) (footnote omitted), aff'd in relevant part, 585 So.2d 112 (Ala.1991), rev’d on other grounds, 625 So.2d 1146 (Ala.1993).
 
 See also James v. State,
 
 788 So.2d 185 (Ala.Crim.App.2000). Additionally, autopsy photographs, although gruesome, are admissible to show the extent of a victim’s injuries.
 
 See Dabbs v. State,
 
 518 So.2d 825 (Ala.Crim.App.1987).
 

 We have reviewed the slides that were shown to the jury, and we find that they were neither unduly prejudicial nor inflammatory. The slides depicted the injuries the victim suffered and made it possible for the jury to view the wounds the medical examiner described. We do not find that there was any error, much less plain error, in this regard.
 

 XII.
 

 The appellant’s twelfth argument is that the trial court erroneously denied several of his pre-trial motions.
 

 A.
 

 The appellant contends that the trial court erred in denying his motion for grand jury transcripts, documents presented to the grand jury, and the names of the grand jury members. In the motion requesting this information, he contended:
 

 “B. In anticipated motions, Defendant Sneed, expects to challenge his indictment on a number of grounds relating to the propriety of the Grand Jury proceedings.
 

 “C. In order to prepare and present evidence on these motions and to adequately litigate these claims, Defendant Sneed must have access to and copies of the testimony, transcript and exhibits from the Grand Jury proceedings as well as a list of the members of the Grand Jury that returned his indictment.”
 

 (C.R. 55.) During a pre-trial hearing, the prosecutor toformed the trial court that there was not a transcript of the grand jury proceedings, which occurred in October 1993, because the proceedings were not recorded. (S.R. 20-21.)
 

 Before an accused may discover grand jury testimony he must establish a particularized need for the information. In
 
 Blackmon v. State,
 
 [Ms. CR-01-2126, August 5, 2005] — So.3d-,-(Ala. Crim.App.2005), we stated:
 

 “Alabama has long protected the secrecy of grand-jury proceedings. See § 12-16-214, Ala.Code 1975. ‘The long time rule, sanctioned by our courts, is that the proceedings before a grand jury are essentially secret.’
 
 Steward v. State,
 
 55 Ala.App. 238, 240, 314 So.2d 313, 315 (Ala.Crim.App.1975). However, a defendant may be allowed to inspect grand-jury proceedings if the defendant meets the threshold test of showing a ‘particularized need’ for breaching the secrecy of those proceedings. As this Court stated in
 
 Millican v. State,
 
 423 So.2d 268 (Ala.Crim.App.1982):
 

 “ ‘Before a defendant is allowed to inspect a transcript of a State’s witness who testified before the grand jury or before a trial judge should
 
 *134
 
 conduct an
 
 in camera
 
 inspection of such testimony, see
 
 Palermo [v. United States,
 
 360 U.S. 343 (1959),] and
 
 Pate [v. State,
 
 415 So.2d 1140 (Ala. 1981) ], the defendant should at least and at a very minimum make some offer of proof (1) that the matters contained in the witness’ grand jury testimony were relevant to the subject matter of the prosecution; (2) and that there exists an inconsistency between grand jury testimony and trial testimony. Unless defense counsel is merely going on a fishing expedition, he will have some information as to the particular inconsistency in the defendant’s testimony. In this case no such showing was made and the existence of any inconsistency between the witness’ trial and grand jury testimony was never even alleged.
 
 Cooks [v. State,
 
 50 Ala.App. 49, 276 So.2d 634 (Ala.Crim.App.1973) ]. Also, there was no showing that the witness’ grand jury testimony, if available, was “of such nature that without it the defendant’s trial would be fundamentally unfair.”
 
 Cooks,
 
 50 Ala.App. at 54, 276 So.2d 634. See also
 
 Husch v. State,
 
 211 Ala. 274, 276, 100 So. 321 (1924). (“Moreover, if the solicitor had had such a statement in his possession, defendant could have required its production by a rule of the court if he thought it was favorable to him.”)
 

 “ ‘In laying the proper predicate for examination of a witness’ grand jury testimony, it should also be established that the witness testified before the grand jury and that such testimony was recorded or reduced to writing, unless a grand juror will be called to disclose the testimony of the witness. Alabama Code 1975, Section 12-16-201.
 

 “ ‘ “When the defendant, in effect, asks for the State District Attorney to produce a document, he should at least establish that this State official has such document or a copy thereof in his possession before the trial court will be put in error.”
 
 Strange v. State,
 
 43 Ala.App. 599, 606, 197 So.2d 437 [(1966)], cert. dismissed, 280 Ala. 718, 197 So.2d 447 (196[7]).
 

 ‘“Once the defendant has laid a proper predicate for the impeachment of a witness who testified before the grand jury, the trial judge should conduct an in camera inspection as outlined in
 
 Palermo,
 
 supra, and
 
 Pate,
 
 supra, to determine (1) whether the statement made by the witness before the grand jury “differed in any respects from statements made to the jury during trial,”
 
 Pate,
 
 supra, and (2) whether the grand jury testimony requested by the defendant “was of such a nature that without it the defendant’s trial would be fundamentally unfair.”
 
 Pate,
 
 supra. This procedure will best preserve and protect the legislative determination that “it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings, remain inviolate.” Alabama Code 1975, Sections 12-16-214 through 226.”
 

 “423 So.2d at 270-71.
 

 “Nonetheless, Alabama has no statute that requires that grand-jury proceedings be recorded or otherwise memorialized. In
 
 Stallworth v. State,
 
 868 So.2d 1128 (Ala.Crim.App.2001), the defendant argued that the circuit court erred in denying her motion to transcript the grand-jury testimony. In upholding the circuit court’s ruling, we stated:
 

 
 *135
 
 “ ‘ “In Alabama there is no statute requiring that testimony before a grand jury be recorded. ‘A Grand Jury is not required to compile records and the testimony in the absence of a statute requiring preservation of the proceedings.
 
 State ex rel. Baxley v. Strawbridge,
 
 52 Ala.App. 685, 296 So.2d 779 [ (Ala.Crim.App.1974) ]. There is no such statute in this state.’
 
 Sommerville v. State,
 
 361 So.2d 386, 388 (Ala.Cr.App.), cert. denied, 361 So.2d 389 (Ala.1978), cert. denied, 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979). See also
 
 Gaines v. State,
 
 52 Ala.App. 29, 30, 288 So.2d 810, 812, cert. denied, 292 Ala. 720, 288 So.2d 813 (1973), cert. denied, 419 U.S. 851, 95 S.Ct. 92, 42 L.Ed.2d 82 (1974). Because there was no legal requirement that the grand jury proceedings be recorded, this contention is without merit.” ’
 

 “Stallworth,
 
 868 So.2d at 1139, quoting
 
 Hardy v. State,
 
 804 So.2d 247, 287 (Ala.Crim.App.1999), aff'd, 804 So.2d 298 (Ala.2000). See also
 
 Steward v. State,
 
 supra.
 

 “At the pretrial hearing on this motion, the prosecutor stated that it was the policy of the district attorney’s office to not record the grand-jury proceedings and that he had no knowledge that the grand-jury proceedings had been recorded in this case. Neither did Black-mon show a ‘particularized need’ to breach the secrecy of the grand-jury proceedings. Based on the cases cited above, we conclude that the circuit court committed no error in denying this motion made after Blackmon had been indicted.”
 

 The appellant’s general assertion that he planned to challenge the indictment on a number of grounds was not sufficient to establish a particularized need for piercing the secrecy of the grand jury proceedings. Also, a defendant is not entitled to the names and addresses of the grand jury members.
 
 See State v. Matthews,
 
 724 So.2d 1140, 1142 (Ala.Crim. App.), aff'd, 724 So.2d 1143 (Ala.1998). Therefore, the trial court did not err in denying the appellant’s request for such information.
 

 B.
 

 The appellant also contends that the trial court erred in denying his motion for individually sequestered voir dire, for jury questionnaires, and for jury sequestration. “In
 
 Ex parte Land,
 
 678 So.2d 224 (Ala.1996), the Alabama Supreme Court held that the method of voir dire examination is within the discretion of the trial court and a trial court’s refusal to allow the use of [a] juror questionnaire is not an abuse of that discretion.”
 
 Hodges v. State,
 
 856 So.2d 875, 913 (Ala.Crim.App.2001), aff'd, 856 So.2d 936 (Ala.2003). Also, “there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination. This rule applies to capital cases, and the granting of a request for individual voir dire is discretionary with the trial court.”
 
 Coral v. State,
 
 628 So.2d 954, 968 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993). Finally, it is within the trial court’s discretion to grant or deny a motion to sequester the jury.
 
 See Centobie v. State,
 
 861 So.2d 1111 (Ala.Crim.App.2001). Therefore, the trial court did not err in denying these pretrial motions.
 

 XIII.
 

 The appellant’s thirteenth argument is that the trial court improperly granted the State’s challenges for cause of four veniremembers based on their views regarding capital punishment.
 

 
 *136
 
 “On the trial for any offense which may be punished capitally or by imprisonment in the penitentiary, it is a good cause of challenge by the state that the person would refuse to impose the death penalty regardless of the evidence produced or has a fixed opinion against penitentiary punishment or thinks that a conviction should not be had on circumstantial evidence, which cause of challenge may be proved by the oath of the person or by other evidence.”
 

 § 12-16-152, Ala.Code 1975.
 

 “The trial judge is given much discretion in determining whether a potential juror should be struck for cause. According to Rule 18.4(e), Ala. R.Crim. P.:
 

 “ ‘When a prospective juror is subject to challenge for cause or it reasonably appears that the prospective juror cannot or will not render a fair and impartial verdict, the court, on its own initiative or on motion of any party, shall excuse that juror from service in the case.’
 

 [[Image here]]
 

 “Furthermore, in order to determine whether the trial judge’s exercise of discretion was proper, this Court will look to the questions directed to and answers given by the prospective juror on voir dire.
 
 Ex parte Cochran,
 
 500 So.2d 1179 (Ala.1985).”
 

 Holliday v. State,
 
 751 So.2d 533, 535 (Ala. Crim.App.1999). Also, “ ‘[t]he trial judge is in the best position to hear a prospective juror and to observe his or her demean- or.’ ”
 
 McNair v. State,
 
 653 So.2d 320, 324 (Ala.Crim.App.1992), aff'd, 653 So.2d 353 (Ala.1994) (quoting
 
 Ex parte Dinkins,
 
 567 So.2d 1313, 1314 (Ala.1990)). Finally,
 

 “[t]he test for determining whether a strike rises to the level of a challenge for cause is ‘whether a juror can set aside their opinions and try the case fairly and impartially, according to the law and the evidence.’
 
 Marshall v. State,
 
 598 So.2d 14, 16 (Ala.Cr.App.1991). ‘Broad discretion is vested with the trial court in determining whether or not to sustain challenges for cause.’
 
 Ex parte Nettles,
 
 435 So.2d 151,153 (Ala.1983). ‘The decision of the trial court “on such questions is entitled to great weight and will not be interfered with unless clearly erroneous, equivalent to an abuse of discretion.” ’
 
 Nettles,
 
 435 So.2d at 153.”
 

 Dunning v. State,
 
 659 So.2d 995, 997 (Ala. Crim.App.1994).
 

 The appellant contends that the trial court erred in excusing Venire-member J.J. because he said he would be open to consider the death penalty and would submit to the law. When it granted the State’s challenge for cause as to Veniremember J.J., the trial court noted that the totality of his answers showed that his duties as a juror would be impaired. A review of the voir dire proceedings shows that this veniremember repeatedly said that he was not sure he could vote to impose the death penalty and that he would rather not have to make that decision. Therefore, the trial court properly granted the State’s challenge for cause as to Veniremember J.J.
 

 Although he does not list them by name and makes only the bare allegation that they were opposed to the death penalty, the appellant also appears to contend that the trial court erred in excusing Venire-members M.C., R.W., and J.H. for cause. However, he did not object to the removal of these veniremembers. Also, the voir dire proceedings clearly show that these veniremembers had fixed opinions against capital punishment and that the trial court properly removed them for cause.
 

 The appellant also argues that death-qualifying a jury is unconstitutional because the jurors are more prone to con
 
 *137
 
 vict, it assumes that the defendant is guilty, and it disproportionately excludes minorities and women. In
 
 Davis v. State,
 
 718 So.2d 1148, 1157 (Ala.Crim.App.1995) (opinion on return to remand), aff'd, 718 So.2d 1166 (Ala.1998), we stated:
 

 “A jury composed exclusively of jurors who have been death-qualified in accordance with the test established in
 
 Wainwright v. Witt,
 
 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), is considered to be impartial even though it may be more conviction prone than a non-death-qualified jury.
 
 Williams v. State,
 
 710 So.2d 1276 (Ala.Cr.App.1996). See
 
 Lockhart v. McCree,
 
 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Neither the federal nor the state constitution prohibits the state from [] death-qualifying jurors in capital cases.
 
 Id.; Williams; Haney v. State,
 
 603 So.2d 368, 391-92 (Ala.Cr.App.1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).”
 

 (Footnote omitted.) Therefore, the appellant’s argument is without merit.
 

 XIV.
 

 The appellant’s fourteenth argument is that the trial court erred in denying his challenge for cause as to Venire-member B.T. because she indicated that she had been a bank teller and had been the victim of a bank robbery. With regard to this veniremember, the following occurred:
 

 “[THE COURT:] Does the defendant have any challenges for cause on Panel 2?
 

 “[DEFENSE COUNSEL]: Yes, number 46, [B.T.]. She was a victim of a bank robbery and thrown to the floor and frightened. Although she said she thought she could set that aside, we would ask the Court to strike her for cause.
 

 “THE COURT: State’s response?
 

 “[PROSECUTOR]: Judge, I don’t think she came close to the test for challenge for cause. It would be our position that is what peremptory strikes are f[o]r.
 

 “THE COURT: The challenge for [cause] is denied.”
 

 (R. 282-83.)
 

 To successfully remove a juror for cause the challenge must be based on the statutory grounds set out in § 12-16-150, Ala.Code 1975, or related to a matter that imports absolute bias on the part of the juror.
 
 See Tomlin v. State,
 
 909 So.2d 213, 235-36 (Ala.Crim.App.2002), rev’d on other grounds, 909 So.2d 283 (Ala.2003). Section 12-16-150, Ala.Code 1975, provides, in pertinent part:
 

 “It is good ground for challenge of a juror by either party:
 

 “(1) That the person has not been a resident householder or freeholder of the county for the last preceding six months.
 

 “(2) That he is not a citizen of Alabama.
 

 “(3) That he has been indicted within the last 12 months for felony or an offense of the same character as that with which the defendant is charged.
 

 “(4) That he is connected by consanguinity within the ninth degree, or by affinity within the fifth degree, computed according to the rules of the civil law, either with the defendant or with the prosecutor or the person alleged to be injured.
 

 “(5) That he has been convicted of a felony.
 

 “(6) That he has an interest in the conviction or acquittal of the defendant or has made any promise or giv
 
 *138
 
 en any assurance that he will convict or acquit the defendant.
 

 “(7) That he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict.
 

 “(8) That he is under 19 years of age.
 

 “(9) That he is of unsound mind.
 

 “(10) That he is a witness for the other party.”
 

 The fact that a veniremember has been a crime victim is not a statutory basis for removing him for cause. Also, Venire-member B.T.’s answers during the voir dire proceedings clearly showed that the fact that she had previously been the victim of a robbery did not make her biased and that she could render an impartial decision in this case. Therefore, the trial court did not err in denying the appellant’s challenge for cause as to Veniremember B.T.
 

 XV.
 

 The appellant’s fifteenth argument is that prosecutorial misconduct denied him a fair trial. Because he did not object at trial to the comments about which he now complains, we review them for plain error.
 
 See
 
 Rule 45A, Ala. R.App. P. As the Alabama Supreme Court stated in
 
 Ex parte Windsor,
 
 683 So.2d 1042, 1061 (Ala.1996):
 

 “ ‘ “While this failure to object does not preclude review in a capital case,
 
 it does weigh against any claim of prejudice.” Ex parte Kennedy,
 
 472 So .2d [1106,] at 1111 [ (Ala.1985) ] (emphasis in original). “This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.”
 
 Johnson v. Wainwright,
 
 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).”
 

 Initially, we note that the trial court instructed the jury that statements made by the attorneys were not evidence. We presume that the jury followed the trial court’s instructions.
 
 See Taylor v. State,
 
 666 So.2d 36 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995). In judging a prosecutor’s closing argument, the standard is whether the argument “ ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ”
 
 Darden v. Wainwright,
 
 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting
 
 Donnelly v. DeChristoforo,
 
 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)).
 

 “In reviewing allegedly improper prose-cutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract.
 
 Whitlow v. State,
 
 509 So.2d 252, 256 (Ala.Cr.App.1987);
 
 Wysinger v. State,
 
 448 So.2d 435, 438 (Ala.Cr.App. 1983);
 
 Carpenter v. State,
 
 404 So.2d 89, 97 (Ala.Cr.App.1980),
 
 cert. denied,
 
 404 So.2d 100 (Ala.1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict.
 
 Orr v. State,
 
 462 So.2d 1013, 1016 (Ala.Cr.App. 1984);
 
 Sanders v. State,
 
 426 So.2d 497, 509 (Ala.Cr.App.1982).”
 

 Bankhead v. State,
 
 585 So.2d 97, 106-07 (Ala.Crim.App.1989), affd in relevant part, 585 So.2d 112, 127 (Ala.1991), rev’d on other grounds, 625 So.2d 1146 (Ala.1993). Finally,
 

 
 *139
 
 “ ‘[d]uring closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.’
 
 Rutledge v. State,
 
 523 So.2d 1087, 1100 (Ala.Cr.App.1987), rev’d on other grounds, 523 So.2d 1118 (Ala.1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel.
 
 Racine v. State,
 
 290 Ala. 225, 275 So.2d 655 (1973). ‘In evaluating allegedly prejudicial remarks by the prosecutor in closing argument, ... each case must be judged on its own merits,’
 
 Hooks v. State,
 
 534 So.2d 329, 854 (Ala.Cr.App.1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) (citations omitted) (quoting
 
 Barnett v. State,
 
 52 Ala.App. 260, 264, 291 So.2d 353, 357 (1974)), and the remarks must be evaluated in the context of the whole trial,
 
 Duren v. State,
 
 590 So.2d 360 (Ala.Cr. App.1990), aff'd, 590 So.2d 369 (Ala. 1991). ‘In order to constitute reversible error, improper argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.’
 
 Mitchell v. State,
 
 480 So.2d 1254, 1257-58 (Ala.Cr.App.1985) (citations omitted). ‘To justify reversal because of an attorney’s argument to the jury, this court must conclude that substantial prejudice has resulted.’
 
 Twilley v. State,
 
 472 So.2d 1130, 1139 (Ala.Cr.App.1985) (citations omitted).”
 

 Coral v. State,
 
 628 So.2d 954, 985 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993).
 

 A.
 

 The appellant contends that the prosecutor improperly asserted his personal opinion in the highlighted portions of the following arguments:
 

 “I will tell you, as [defense counsel] did, if I have done anything or if I have said anything that you find offensive or ugly to them, I apologize. There are two things that work against me sometimes. I’m bigger than most folks. It is very easy to think I will pick on folks.
 
 I feel real strong about this case.
 
 Sometimes I say things pretty strong. I tell you now I don’t mean anything personal to either one of these two lawyers in this case. I appreciate the way they handled the case.”
 

 (R. 907-08) (emphasis added).
 

 “I don’t know what [the defendant] thought, but I know what he did. Kicked that poor little man that either one of them could have picked — was he going to give them any trouble? You saw him on the tape. What did he do? He is just hiding and running, hiding and running. Either one of them could have jerked him up with one hand. He wasn’t going to give them any trouble. That was the most unnecessary killing I can imagine, and we all saw what happened.
 
 That was a senseless, senseless murder.”
 

 (R. 924) (emphasis added).
 

 “They would tell you the mitigating circumstance is he cooperated with the law enforcement. We are not talking about a scared, disturbed, young man who when he got away from this horrible codefendant he was so afraid of and called the law.
 
 We would be looking at this thing in a whole different light. I would.
 
 I don’t know if you would or not, but I sure would. What did he do? He took off with him, he got away from him, left him at home and went back the next day and picked him back up. Went out there to bust open the safe, and then left and fled the state and initially lied to the police about it. Only when he was confronted with the tape that he couldn’t
 
 *140
 
 deny and there wasn’t any question when you look on that tape that it was him. Only when he saw that did he say, ‘Well, yeah, but I didn’t mean to.’ ”
 

 (R. 1116-17) (emphasis added).
 

 “ ‘While it is never proper for the prosecutor to express his personal opinion as to the guilt of the accused during closing argument, reversible error does not occur when the argument complained of constitutes mere expression of opinion concerning inferences, deductions and conclusions drawn from the evidence.’ ”
 

 Allen v. State,
 
 659 So.2d 135, 139 (Ala. Crim.App.1994) (quoting
 
 Sams v. State,
 
 506 So .2d 1027, 1029 (Ala.Crim.App.1986)). “ ‘A prosecutor as well as defense counsel has a right to present his impressions from the evidence,’ and ‘[h]e may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way.’
 
 Watson v. State,
 
 398 So.2d 320, 328 (Ala.Cr.App.1980), writ denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).”
 
 Henderson v. State,
 
 584 So.2d 841, 856-57 (Ala.Crim.App.1988), remanded on other grounds, 585 So.2d 862 (Ala.1991).
 

 After reviewing the prosecutor’s comments in context, we conclude that they were not personal comments on the appellant’s guilt. Rather, they were simply permissible comments on the evidence. Accordingly, we do not find that there was any plain error in this regard.
 

 B.
 

 The appellant also challenges the following comments that occurred during the prosecutor’s penalty-phase closing argument:
 

 “In this case one of the gentlemen asked about DNA, that he would have to see it and it would have to be beyond a shadow of a doubt. We didn’t have any DNA. You know beyond a shadow of a doubt what happened out there. You have seen.
 
 There will never be a case more fitting for capital punishment than this case.”
 

 (R. 1125) (emphasis added).
 

 “They also contend that his age was a mitigating circumstance. Mr. Cowart didn’t explain to you why he thought the age of 23 was a mitigating circumstance in this case. I would have been interested in seeing why he thought so. I wrote down a few things, and this is probably not all of them, and maybe some of you could think of some more. At 23 somebody could have voted in any state of the United States of America for two years — 21. He could have driven a car for six or seven years. Had lived back in the time of the Vietnam War when we still had the draft, he could have been drafted and fought for his country. The Middle East is full of young men from this country right now putting their life on the line that are far younger than Mr. Sneed was when he participated in taking Mr. Terry’s life.
 

 “The juvenile age in Alabama for this kind of offense is 16, but he could have been tried as an adult had he been If when he did this, almost ten years younger than what he was in fact when he did it.”
 

 (R. 1108-09) (emphasis added).
 

 “One of these people that testified today — I don’t know if it was the one — the first one or the second one — I think it was the second one — testified that she thought it looked to her like — I don’t
 
 know
 
 — she
 
 must have left her wegge [Ouijaj board at Tuscaloosa
 
 — it looked to her like that he thought the other fellow was going to turn around and shoot him next. Now where in the
 
 *141
 
 world did anybody get such a thing? I tell you where she got it, she got it out of just what she told you up here when I asked her the question who was paying her and how good her business is going to be if she doesn’t give the right answers.”
 

 (R. 1110-11) (emphasis added).
 

 “[T]he law does not limit somebody’s ability to come in and contend anything they want to tell you basically is a mitigating circumstance. I don’t mean anything when I talk about a bad neighborhood. Some of you may or may not have grown up in a bad neighborhood. You may have done that during your childhood. But most of the people we deal with up here in this courthouse on the criminal side are people who come from a bad childhood or bad neighborhood and didn’t have maybe the best father figure in the world, didn’t have the most money in the world. Certainly we have people that come from the absolute top of the town that wind up in criminal court, but you know and I know that is not much. That is the exception rather than the rule. Most people who come up here have got a sad tale to tell and most of the time there is some truth to it.
 
 But we can’t condone, we can’t allow somebody to escape punishment for their actions because they had a bad childhood.
 
 We would have to start arming convenience store clerks and package store clerks and bank tellers and everybody else if we allowed that. That is just not an excuse. Bad neighborhood? How poor do they have to be? How poor do they have to be?”
 

 (R. 1115-16) (emphasis added).
 

 In capital cases, “the prosecutor and defense counsel shall be given an opportunity to argue for and against respectively the imposition of the death penalty in the individual case.”
 
 Beck v. State,
 
 396 So.2d 645, 663 (Ala.1981), rev’d on other grounds, 485 So.2d 1201 (Ala.1984). The prosecutor’s comments in favor of the death penalty
 

 “ ‘did not imply that the defendant himself would commit illegal acts in the future, nor did the prosecutor seek by inflammatory appeal to arouse in the jurors a personal hostility towards, or fear of, the defendant. Accordingly, the prosecutor’s comments properly argued the necessity of law enforcement as a deterrent to crime and as a protection of society.’ ”
 

 Kuenzel v. State,
 
 577 So.2d 474, 503-04 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.1991). After reviewing the comments in context, we conclude that they were arguments against the jury recommending a sentence of imprisonment for life without the possibility of parole. Accordingly, we do not find that there was any plain error in this regard.
 

 C.
 

 The appellant further contends that the prosecutor made improper comments on the law during the voir dire proceedings. During the voir dire proceedings, one veniremember indicated that it bothered him that the killing occurred in 1993 and the appellant was not being tried until 2006. The prosecutor told the veniremembers that there were just some questions that they could not answer and then stated:
 

 “The evidence will be presented in the case by either party, and if either of them have DNA evidence and they can prove the proper predicate, first of all [if] there is any there, and one side or the other has it and can prove the legal requirement, then you may or may not hear about it. If not, I would suggest that is one of those things I mentioned to you earlier,
 
 you ought to base your
 
 
 *142
 

 verdict on the evidence you do hear rather than the evidence that you don’t.”
 

 (R. 110) (emphasis added). This comment was not a misstatement of the law and was not inappropriate. Therefore, we do not find that there was any plain error in this regard.
 

 D.
 

 Last, the appellant challenges the following argument:
 

 “I want to talk to you a minute about the aggravating circumstances. The aggravating circumstances, murder during the course of a robbery. Why is that an aggravating circumstance? It has nothing to do with the money. My goodness, at the most Bud’s lost a cash register, and they can afford that, and maybe $50.00. They can certainly afford that. That has nothing to do with this other than you have to have that to make it a robbery. Why is the murder during a robbery treated more harshly than a murder without a robbery? Why is that an aggravating circumstance?
 
 Because it could be anybody.
 
 If you get murdered in a fight it is arguably self-defense, it is at least a little bit your fault, you were there, you were engaged with this person, you might have been somewhere where you didn’t need to be, and you might have done something you didn’t or shouldn’t have done. But a murder during the course of a robbery the victim had nothing to do with it. That is why it is treated more harshly.”
 

 (R. 1119-20) (emphasis added). The appellant asserts that the prosecutor implied that the Alabama Legislature enacted the capital statutes for situations where the victims were unfamiliar to the defendants and that there is no such distinction under Alabama law. We do not agree with the appellant’s characterization of this argument. Rather, we conclude that the prosecutor was simply attempting to explain why committing a murder during the commission of a robbery is a capital offense. Therefore, we do not find that there was any plain error in this regard.
 

 XVI.
 

 The appellant’s sixteenth argument is that his “death sentence was acquired in violation of the Sixth and Eighth Amendments.” (Appellant’s brief at p. 97.)
 

 A.
 

 The . appellant initially contends that his death sentence violates the United States Supreme Court’s decision in
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that any fact that increases a sentence above the statutory maximum must be presented to a jury and proven beyond a reasonable doubt. In
 
 Ring,
 
 the Court extended its holding in
 
 Apprendi
 
 to death penalty cases.
 

 First, the appellant asserts that the indictment was defective because it did not set forth the aggravating circumstances upon which the State intended to rely. We addressed and rejected a similar argument in
 
 Stallworth v. State,
 
 868 So.2d 1128, 1186 (Ala.Crim.App.2001) (opinion on return to second remand), as follows:
 

 “Stallworth also argues, in relation to the
 
 Ring
 
 issue, that his indictment was void because it failed to include in the indictment the aggravating circumstances the State intended to prove. In
 
 Poole v. State,
 
 846 So.2d 370 (Ala.Crim. App.2001), we held that, although
 
 Ap-prendi
 
 required that the facts that increased a sentence above the statutory maximum must be submitted to a jury, those facts did not have to be alleged in the indictment. Recently, the Alabama
 
 *143
 
 Supreme Court adopted our holding in
 
 Poole.
 
 See
 
 Hale v. State,
 
 848 So.2d 224 (Ala.2002).
 

 “Also, the holdings in
 
 Poole
 
 and
 
 Hale
 
 are consistent with prior caselaw, which holds that aggravating circumstances do not have to be alleged in the indictment. See
 
 Ex parte Lewis,
 
 811 So.2d 485 (Ala. 2001), and
 
 Dobard v. State,
 
 435 So.2d 1338 (Ala.Crim.App.1982). Stallworth’s argument is not supported by Alabama law.”
 

 (Footnote omitted.) Accordingly, the appellant’s argument is without merit.
 

 Second, the appellant asserts that his conviction violates
 
 Ring
 
 because the jury did not unanimously determine that statutory aggravating circumstances were present and that the aggravating circumstances outweighed the mitigating circumstances and because it was not required to specify which aggravating circumstances it found to exist.
 

 In the guilt phase, the jury unanimously found beyond a reasonable doubt that the appellant committed a robbery during the course of committing a murder. “The jury’s unanimous finding of one aggravating circumstance is sufficient to satisfy
 
 Ring.” Ex parte McNabb,
 
 887 So.2d 998, 1006 (Ala.2004). Also, “ ‘[t]he determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently,
 
 Ring
 
 and
 
 Apprendi
 
 do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.’ ”
 
 Ex parte Hodges,
 
 856 So.2d 936, 943 (Ala. 2003) (quoting
 
 Ex parte Waldrop,
 
 859 So.2d 1181, 1190 (Ala.2002)).
 

 Third, the appellant criticizes the Alabama Supreme Court’s decision in
 
 Ex parte Waldrop.
 
 However, § 12-3-16, Ala. Code 1975, provides:
 

 “The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals, and the decisions and proceedings of such courts of appeals shall be subject to the general superintendence and control of the Supreme Court as provided by Constitutional Amendment No. 328.”
 

 Because this court is bound by the decisions of the Alabama Supreme Court, we are not in a position to reverse that court’s decision in
 
 Ex parte Waldrop.
 

 Fourth, the appellant argues that the trial court gave confusing and contradictory instructions regarding the robbery aggravating circumstance. However, the jury recommended a sentence of imprisonment for life without the possibility of parole. Therefore, error, if any, in the trial court’s instructions was harmless.
 
 See
 
 Rule 45, Ala. R.App. P.
 

 B.
 

 The appellant also contends that the trial court diminished the jury’s responsibility by referring to its verdict in the penalty phase as a recommendation. However, the jury recommended a sentence of imprisonment for life without the possibility of parole. Therefore, error, if any, in the trial court’s comments was harmless.
 
 See
 
 Rule 45, Ala. R.App. P.
 

 C.
 

 The appellant further contends that, in light of
 
 Ring,
 
 Alabama’s standardless override results in the arbitrary application of the death penalty in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and the Equal Protection Clause. “The United States Supreme Court in
 
 Ring
 
 did not invalidate its earlier holding in
 
 Harris v. Alabama,
 
 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), which upheld § 13A-5-47(e), Ala. Code 1975 — commonly referred to as the
 
 *144
 
 judicial-override statute- — against constitutional attack.”
 
 Tomlin v. State,
 
 909 So.2d 213, 282 (Ala.Crim.App.2002), rev’d on other grounds, 909 So.2d 283 (Ala.2003). Therefore, the appellant’s argument is without merit.
 

 XVII.
 

 The appellant’s seventeenth argument is that lethal injection constitutes cruel and unusual punishment. We recently addressed and rejected a similar contention in
 
 Lewis v. State,
 
 [Ms. CR-03-0480, November 2, 2007] — So.3d-,-(Ala. Crim.App.2007).
 

 XVIII.
 

 Pursuant to § 13A-5-53, Ala.Code 1975, we are required to address the propriety of the appellant’s conviction and sentence of death. The appellant was indicted for and convicted of capital murder because he committed the murder during the course of a robbery or an attempted robbery.
 
 See
 
 § 13A-6-40(a)(2), Ala.Code 1975.
 

 The record does not reflect that the sentence of death was imposed as the result of the influence of passion, prejudice, or any other arbitrary factor.
 
 See
 
 § 13A-5 — 53(b)(1), Ala.Code 1975.
 

 The trial court found that the aggravating circumstances outweighed the mitigating circumstances. It found that the State proved the existence of two aggravating circumstances: 1) the appellant committed the capital offense while he was engaged in or was an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit, a robbery,
 
 see
 
 § 13A-5-49(4), Ala.Code 1975; and 2) the offense was especially heinous, atrocious, or cruel when compared to other capital offenses,
 
 see
 
 § 13A-5-49(8), Ala.Code 1975. The trial court found that the following statutory mitigating circumstances existed: 1) the appellant did not have a significant history of prior criminal activity,
 
 see
 
 § 13A-5-51(l), Ala. Code 1975; 2) the appellant was an accomplice to the robbery-murder and did not personally shoot and kill the victim,
 
 see
 
 § 13A-5-5K4), Ala.Code 1975; and 3) the appellant was twenty-three years old at the time of the robbery-murder,
 
 see
 
 § 13A-5-51(7), Ala.Code 1975. With regard to nonstatutory mitigating circumstances, the trial court found that that the appellant was from an abusive home, he was likely raped as a young boy, he used drugs and alcohol at an early age, his drug and alcohol problems drove him to a life of petty crimes, and the jury recommended by a vote of seven to five that the appellant be sentenced to life without the possibility of parole. The sentencing order shows that the trial court weighed the aggravating circumstances and mitigating circumstances and correctly sentenced the appellant to death. The record supports its decision, and we agree with its findings.
 

 Section 13A-5-53(b)(2), Ala.Code 1975, requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant’s sentence of death. After independently weighing the aggravating and mitigating circumstances, we find that the death sentence is appropriate.
 

 As required by § 13A-5-53(b)(3), Ala.Code 1975, we must determine whether the appellant’s sentence was disproportionate or excessive when compared to the penalty imposed in similar cases. The appellant committed murder during the course of a robbery. Similar crimes are being punished by death throughout this state.
 
 See Gaddy v. State,
 
 698 So.2d 1100 (Ala.Crim.App.1995), aff'd, 698 So.2d 1150 (Ala.1997);
 
 Brooks v. State,
 
 695 So.2d 176 (Ala.Crim.App.1996), aff'd, 695 So.2d 184 (Ala.1997);
 
 Bush v. State,
 
 695 So.2d 70
 
 *145
 
 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997);
 
 Peoples v. State,
 
 510 So.2d 554 (Ala.Crim.App.1986), aff'd, 510 So.2d 574 (Ala.1987). Therefore, we find that the sentence was neither disproportionate nor excessive.
 

 Finally, we have searched the entire record for any error that may have adversely affected the appellant’s substantial rights, and we have not found any.
 
 See
 
 Rule 45A, Ala. RApp. P.
 

 Accordingly, we affirm the appellant’s conviction and sentence of death.
 

 AFFIRMED.
 

 McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
 

 [1]
 

 . We affirmed Hardy’s conviction and death sentence on direct appeal.
 
 See Hardy v. State,
 
 804 So.2d 247 (Ala.Crim.App.1999), aff'd, 804 So.2d 298 (Ala.2000). We also affirmed the denial of Hardy's Rule 32 petition.
 
 See Hardy
 
 v.
 
 State,
 
 (No. CR-05-1363, February 23, 2007) 4 So.3d 585 (Ala.Crim.App.2007) (table).
 

 [2]
 

 . The videotape did not have any audio.
 

 [3]
 

 . The trial court did erroneously state in the first paragraph of its sentencing order that "[t]he jury recommended by a vote of 5 to 7 that the defendant be sentenced to life imprisonment without possibility of parole.” (C.R. 23-24.) It is clear that this was a misstatement that was corrected later in the court’s order.
 

 [11]
 

 “11Other federal and state courts have also addressed this issue.
 
 See, e.g., White v. Wainwright,
 
 809 F.2d 1478, 1485 (11th Cir.1987) (death penalty upheld based upon vicarious application of heinous, atrocious cruel factor since defendant was armed and on scene as active participant in robbery);
 
 Ex parte Bankhead,
 
 585 So.2d 112, 125 (Ala.1991) (‘heinous atrocious cruel’ aggravating circumstance upheld based on manner of killing and not on defendant’s actual participation);
 
 Haney v. State,
 
 603 So.2d 368, 380-381, 385-387 (Ala.Crim.App. 1991) (appellant admitted paying co-defendant to kill her husband and giving him instructions on how to approach her home without being observed);
 
 Fox v. State,
 
 779 P.2d 562, 578 (Okla.Crim.App. 1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990) (death penalty supported by evidence that defendant armed himself with shotgun and shells before robbing grocery
 
 *118
 
 store with codefendant where three people were killed). But see
 
 Omelus [v. State],
 
 584 So.2d [568] at 568 [(Fla. 1991)] (defendant who hired contract killer cannot be held vicariously responsible under ‘heinous atrocious cruel’ factor).”
 

 [4]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).